## Frederick Durr v. D. B. Replogle, Appellant.

167    347
f38SC  248
38SC   250

*Contract—Bailment—Sale—Judgment—Retaking possession of goods.*

Goods valued at a specified amount were delivered by A to B, under an agreement that certain sums for their "care, use and hire" should be paid at stated intervals, A to make a bill of sale for them to B, if he so elects, upon payment of such sum as would, with previous payments of hire, amount to the sum specified as their value; and providing that no title should pass until the whole of said sum should have been paid; and providing further that if default should be made in the payment of any of the "installments of hire," A should be at liberty either to enter judgment for the amount "of the said and other unpaid installments of hire," or enter into the place where the goods should be kept, and take and repossess them. After an installment had become due judgment was entered under the warrant of attorney in the agreement, and subsequently A entered and took possession of the goods. About one hour after the goods were taken, judgment was entered against B by the defendant, and a fi. fa. issued thereon. *Held,* that the defendant's fi. fa. gave him no lien on the goods.

Argued Feb. 27, 1895. Appeal No. 342, Jan. T., 1895, by defendant, from judgment of C. P. Lackawanna Co., Jan. T., 1894, No. 250, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Sheriff's interpleader to determine the ownership of certain machinery. Before ARCHBALD, P. J.

The court directed a verdict for plaintiff, reserving the following question, in which the facts appear:

"On June 12, 1893, Nicholas Kiefer on the one side and Walter D. Frank and Frank Leader on the other, entered into an agreement which reads as follows:

"'Memorandum of agreement made this twelfth day of June, A. D., 1893, between Nicholas Kiefer (hereinafter styled the bailor) of the city of Scranton and state of Pennsylvania, of the one part, and Walter D. Frank and Frank Leader of the same place (hereinafter styled the bailees) of the other part.

"'Witnesseth: That the said bailor does hereby deliver unto the said bailees on hire and on the terms and conditions hereinafter stipulated, for the term of thirty-one months from the

twenty-fourth day of June, A. D., 1893, all his stock of print-ing machinery, type, and fixtures as are mentioned in the sched-ule or inventory hereunto attached and valued at the sum of two thousand dollars for the care, use and hire of which the said bailees agree to pay as follows, to wit: The sum of fifty ($50.00) dollars at the execution of the lease; the sum of five hundred dollars on the twenty-fourth day of August, 1893, the sum of one hundred and fifty ($150.00) dollars every three months thereafter for the term of nine months, payable on the following days, to wit: November 24th, 1893; February 24th, 1894, and May 24th, 1894; the sum of two hundred and twenty-three and fifty one hundredth ($223$\frac{50}{100}$) dollars on the twenty-fourth day of August, 1894; the sum of one hundred and fifty dollars every three months thereafter for the period of nine months, payable on the following days, to wit: Novem-ber 24th, 1894; February 24th, 1895; May 24th, 1895; the sum of one hundred and eighty-seven and fifty one hundredth dol-lars ($187$\frac{50}{100}$) on the twenty-fourth day of August, 1895; the sum of one hundred and fifty dollars ($150.00) the twenty-fourth day of November, 1895; the sum of one hundred and four and seventy-five one hundredth dollars ($104$\frac{75}{100}$) on the twenty-fourth day of January, 1896, to the said bailor for the use and hire of the said machinery, type and fixtures. And the said bailor hereby agrees that if at any time during the term herein mentioned or at the expiration thereof the said bailees or their legal representatives or assigns shall wish to purchase said machinery, type and fixtures, the said bailor will make and deliver to them or to such representatives or assigns a bill of sale thereof upon payment of such sum as will with previous payments of hire amount to the sum of two thousand dollars with accrued interest on unpaid installments of hire.

" ' But it is expressly understood by and between the parties to this agreement that no title to the said machinery, type and fixtures shall vest in the said bailees except as lessees under this agreement until the whole sum as hereinbefore stipulated has been paid to the said bailor and said bill of sale executed and delivered.

" ' And the said bailees covenant to keep in repair, and not to injure said machinery, type or fixtures or in any way to part with the possession or custody thereof without the written con sent of the said bailor.

" ' It is further agreed that if default shall at any time be made in the payment of any of the said installments of hire or failure to perform any of their covenants herein contained, by the said bailees, then the said bailor shall be at liberty to, and is hereby empowered either to enter judgment with waiver of existing exemption laws, in the office of the prothonotary of Lackawanna county, against the said bailees, for the amount of the said and other unpaid installments of hire—but it is hereby expressly agreed that such confession of judgment shall not be entered until after such default of payment or breach of covenant shall appear—or to enter into the place where the said machinery, type and fixtures are supposed to be kept and to take and repossess the same.

" ' Witness our hands and seals this twelfth day of June, A. D. 1893.

" ' Signed, sealed and delivered in the presence of

" ' J. W. BROWNING.

" ' NICHOLAS KEIFER, [SEAL]

" ' W. D. FRANK,    [SEAL]

" ' F. H. LEADER.'   [SEAL]

" An inventory of the goods was indorsed on the agreement.

" Kiefer assigned his interest in the agreement to plaintiff.

" In pursuance of this agreement, the property which is in dispute in this issue, was delivered by Mr. Kiefer to Frank & Leader on the date of the agreement, and they paid him at that time the sum of fifty dollars ($50.00), the down pay ment which is mentioned therein. Subsequently on the 26th day of October, Frank & Leader paid seventy-five dollars ($75.00) more, but no further part of the five hundred dollars which, according to the agreement, was to have been paid on the 24th day of August, was ever paid by them in money to Mr. Kiefer or to any other party for him. On the twenty-second day of October, 1893, Mr. Kiefer assigned all his right, title and interest in and to this agreement to Fred Durr, who is the plaintiff in this issue. Frank & Leader continued in possession of the goods which they had thus received from Mr. Kiefer, mentioned in the agreement, until the 28th of October, 1893. On the 28th day of October, 1893, judgment was entered in this court with a waiver of exemption for the sum of eighteen hundred and seventy-five dollars ($1,875), the balance of

the $2,000 mentioned in the agreement. This judgment was entered by virtue of the authority contained in the agreement and was in favor of Nicholas Kiefer assigned to Fred Durr v. Walter D. Frank and Frank Leader. On the 10th of November at 11 o'clock, A. M., Mr. Durr took possession of the goods which are mentioned in the agreement and are in dispute in this case, and put them into the custody of Mr. Kiefer, leasing them to him at that time. The same day the defendant, D. B. Replogle, entered a confession of judgment in this court against Frank & Leader for the sum of forty dollars, and issued a writ of fieri facias which was received by the sheriff at 12 o'clock and 7 minutes noon. On the 18th of November, 1893, judgment was entered in this court for five hundred dollars, also in favor of Mr. D. B. Replogle and against Frank & Leader on a confession of judgment of the same day, and a fieri facias was also issued the same day upon this judgment, and received by the sheriff at 10 o'clock and 15 minutes in the morning, upon which judgment the sheriff made a levy upon the goods in question in this suit the 27th day of November, 1893. Upon these facts the question of law is reserved—whether the plaintiff or the defendant is entitled to recover in this proceeding, with leave to the court to enter judgment for the one or the other according as the judgment of the court shall, upon further consideration, be found to be for the plaintiff or the defendant."

The court, by ARCHBALD, P. J., filed the following opinion:

"It is not necessary in the view which we take of this case to determine whether the agreement recited in the reserved point created a bailment or only a conditional sale. There are other facts which conclusively dispose of it without a resort to that question. The agreement under which the goods were delivered to Frank and Leader provides that they are to pay $50.00 at the execution of it, June 12, 1893, $500 on the 24th of August following, and certain other subsequent sums which we do not need to notice. The down payment of $50.00 was made when the goods were delivered, and $75.00 more were paid afterwards on October 26th, but this constitutes the sum and substance of the payments made. The agreement further provides that if default shall at any time be made in the payment of any of the installments mentioned

therein, Mr. Kiefer, who is styled the bailor, shall be at liberty to enter up judgment for the amount of such unpaid installments, or to enter the place where the goods are kept, and take and repossess himself of the same. On the 10th of November at 11 o'clock A. M., Mr. Durr, the plaintiff, who had succeeded to the rights of Mr. Kiefer, under the contract, taking advantage of this clause, entered and took possession of the property in dispute and put the goods into the custody of Mr. Kiefer. That he had the right to do this, there can be no reasonable question. The second installment had not been paid, and so far as Frank & Leader were concerned their rights under the agreement by reason of such default were liable to this defeasance. Nor at the time had the rights of any other party attached. The first execution of the defendant in this issue was not delivered to the sheriff until a subsequent hour in the day, so that the goods were out of the possession of the defendants in that execution, and their rights therein terminated, before the execution had a chance to obtain a lien thereon. Let us see if this is not so. Whatever effect the agreement in question might have as against execution or attaching creditors of the parties named bailees therein, it was entirely valid as between the immediate parties to it. It was competent, therefore, for them to provide that no title to the property should pass until the whole sum of $2,000 with interest—being the aggregate amount of the installments—had been paid and a bill of sale delivered, and that in default of a payment of the installments as they accrued, Mr. Kiefer might reclaim and repossess himself of the property. Moreover, until the rights of third parties had intervened, the contract was enforceable according to its terms, against the property in the hands of Frank & Leader. However it might or might not have been afterwards, they had at the best but a defeasible title, liable to be overturned upon a breach of the conditions upon which they had obtained it, and by the action of Mr. Durr before any one had called the matter in question, the property was retaken, and whatever previous right of ownership in it there had been was cut off. It does not matter that this was done the same day that the defendant issued his execution, and but a short time previous thereto. If made in good faith, it was as valid if done at one time as at another, provided it was before

the opportunity for a lien to attach had arisen. An ordinary sale of personal property by the defendant in an execution, if made in good faith before the writ comes into the hands of the sheriff, is good, even though it be made at an earlier hour of the same day. This is one reason why the exact time of receiving the writ is indorsed by the sheriff upon it. If this be true of a voluntary transfer, much more must it be of an involuntary one which is enforced according to the terms of a previously existing contract on which the goods are held.

" When the defendants' execution issued the case stood no different from what it would if the plaintiff, owning and having possession of the property, had agreed that the defendants in the execution might purchase and have it upon certain terms. Whatever conditional interest this might be held to give in the property, it is not one that would be available to an execution creditor without previous full compliance with these terms: Sage v. Sleutz, 23 Ohio St. 1 ; Buckmaster v. Smith, 22 Vt. 203.

" The entering up of judgment by the plaintiff did not interfere with the right of reclaiming the property which he exercised. While the agreement is in the alternative, that the so-called bailor may enter up judgment or reclaim the property, there is nothing to prevent his doing both. The judgment is evidently intended merely as security for the unpaid installments. A default does not make them all presently due, and execution could therefore only issue for them as they became payable. The entry of judgment consequently constituted but a step in the direction of collecting the installments. It did not amount to a satisfaction, nor are the parties against whom it was entered brought any nearer to a fulfillment of their side of the contract. Neither did it amount to an affirmance of title in them, because the agreement says no title shall pass until the installments are paid and a bill of sale delivered, and as far as the parties are concerned, this is binding. The two remedies given by the agreement are not inconsistent with each other, and the partial pursuit of the one does not therefore preclude a resort to the other. The usual rule must prevail, that a party can have any number of different remedies so long as he secures but one satisfaction. Having retaken the goods into his own possession, no doubt Mr. Durr could not now collect the judgment, and if he undertook to enforce it the court would very

quickly interfere. The mere fact, however, that it is left open amounts to very little. There are many judgments of record that in like manner have served their purpose and been superseded, and yet stand undisposed of.

" Without regard, therefore, to the question whether the transaction was a sale or a bailment, we are of opinion upon the facts stated in the point reserved that the plaintiff is entitled to judgment. The rule for judgment for the defendant non obstante veredicto is consequently discharged and judgment ordered to be entered on the verdict for the plaintiff."

*Errors assigned* were, (1) instruction for plaintiff; (3) in discharging the rule for judgment non obstante veredicto; (4) entering judgment on verdict for plaintiff; (5) in not entering judgment on verdict for defendant.

*C. W. Dawson, C. B. Gardner* with him, for appellant.—A judgment entered upon a confession without action is as conclusive as any other judgment, and is equally protected against collateral attack or impeachment, and like a judgment rendered after a contest of the merits it operates as a merger of the cause of action, and while it remains in force the plaintiff cannot maintain an action for the same claim or demand: 2 Black on Judgments, sec. 698; Braddee v. Brownfield, 4 Watts, 474; Secrist v. Zimmerman, 55 Pa. 446; Weikel v. Long, 55 Pa. 238.

The defense of waiver by election arises where the remedies are inconsistent, and where one action is founded on an affirmance, and the other on a disaffirmance of a voidable contract, or sale of property. In such cases any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties once for all: Gardner v. Lane, 98 Mass. 519; Hooker v. Hubbard, 97 Mass. 175; Morris v. Rexford, 18 N. Y. 552; Rodermund v. Clark, 46 N. Y. 354; Warren v. Spencer Water Co., 143 Mass. 9; Eliot v. McCormick, 144 Mass. 10; Bunch v. Grave, 111 Ind. 351; Lee v. Templeton, 73 Ind. 315; Browning v. Bancroft, 8 Met. 278; Smith v. Hodson, 4 T. R. 211; 2 Smith's Leading Cases, 1379; Campbell v. Fleming, 1 A. & E. 40; Richardson v. Dunn, 2 Q. B. 218; Jordan v. Norton, 4 M. & W. 155; Birch v. Wright, 1 T. R. 178; Brewer v. Sparrow, 7 B. & C. 310;

Buermann v. Van Buren, 44 Mich. 496; Floyd v. Browne, 1 Rawle, 121; Bulkley v. Morgan, 46 Conn. 393; Bailey v. Hervey, 135 Mass. 172; Butler v. Hildredth, 5 Met. 49; Scott v. Hough, 151 Pa. 630; Seanor & Bierer v. McLaughlin, 165 Pa. 150.

*C. Comegys,* for appellee, cited: Rowe v. Sharp, 51 Pa. 26; Enlow v. Klein, 79 Pa. 488; Ditman v. Cottrell, 125 Pa. 606; Bishop on Contracts, sec. 382; Corbin v. Healy, 20 Pick. 514; Campbell v. Hickok, 140 Pa. 290; Scott v. Hough, 151 Pa. 630; Seanor & Bierer v. McLaughlin, 165 Pa. 150; Campbell Printing Press Co. v. Rockaway Publishing Co., 29 Atl. Rep. 681.

PER CURIAM, April 8, 1895:

In this issue under the sheriff's interpleader act, the learned president of the common pleas directed a verdict for the plaintiff subject to the opinion of the court on the question of law arising upon the facts stated in his charge. On the rule for judgment non obstante veredicto, etc., the question of law reserved was considered and judgment was entered on the verdict in favor of plaintiff. The errors assigned are: Directing the verdict for plaintiff, and afterwards entering judgment thereon in his favor; in not directing a verdict for defendant, and in discharging the rule for judgment non obstante veredicto.

We are satisfied, from an examination of the record, etc., that the learned judge's rulings are substantially correct, and that neither of the assignments of error should be sustained. All that can be profitably said on the questions involved will be found in his opinion discharging the rule for judgment non obstante veredicto, etc., sent up with the record. The judgment is affirmed on that opinion.

Judgment affirmed.