# Powell *v.* Clawson, Appellant.

*Contract—Sale—Chattels—Retention of title.*

An agreement in writing for the sale of chattels, which provides that the seller shall retain title until a certain portion of the purchase money is paid and the balance secured in a manner satisfactory to himself, is a perfectly valid contract between the parties. If the purchase money be not paid or secured, and if the seller resumes possession of the chattels, at a time when they are free from lien, he may retain that possession as against an execution creditor of the purchaser whose writ did not issue until after the resumption of such possession.

Argued Oct. 12, 1908. Appeal, No. 47, Oct. T., 1906, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1906, No. 777, on verdict for plaintiff in an interpleader in case of Elmer E. Powell *v.* William S. Clawson. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

246      POWELL *v.* CLAWSON, Appellant.

Statement of Facts—Opinion of Court below. [38 Pa. Superior Ct.

Feigned issue on a sheriff's interpleader.

At the trial the jury under binding instructions returned a verdict in favor of the plaintiff.

On motion for a new trial AUDRENIED, J., filed the following opinion:

This is an issue under the sheriff's interpleader act to determine the title to certain horses, harness, carriages and stable furniture and fixtures taken in execution as the property of H. H. Price under a judgment obtained against him by William S. Clawson and claimed by Elmer E. Powell, in whose possession they were found by the sheriff. It appeared at the trial that the chattels had, prior to December 6, 1905, belonged to Powell, who had employed them in carrying on a livery stable business at Nos. 832 and 834 North Forty-third Street, in the city of Philadelphia, and who, on that day, by an agreement in writing, bound himself to sell them to Price for the sum of $5,000, $1,000 whereof was then paid by the latter in cash. On or before January 10, 1906, a second payment of $1,000 was to be made to Powell, who, upon receipt thereof and of security satisfactory to him for the balance of the purchase money, was to give title and possession of the chattels mentioned to Price. It was stipulated that until this was done the title to the articles embraced by the agreement should remain in Powell, who was to continue the business at the livery stable under the name of H. L. Collins, manager, in which he was then carrying it on. The profits of the business were to be credited on the purchase money that Price was to pay, or were to be paid him should he fail to comply with the terms of his agreement. Time was made of the essence of the agreement, and it was provided that if Price should default in his second payment, or refuse to carry out all of the terms agreed upon, his first payment of $1,000 should be retained by Powell as liquidating damages for his breach of contract.

Without waiting for the second $1,000, Powell turned the livery stable and its contents over to Price, and the latter thereupon proceeded to carry on the business, appropriating the profits to himself, but conducting the stable under the

name of H. L. Collins, manager. Certain sums were from time to time paid by Price to Powell on account of the payment due on January 10, 1906; but whether these, as Price contends, aggregated somewhat more than $1,000, or fell considerably short thereof, as is insisted by Powell, is immaterial for the purpose of disposing of the case. For the remainder of the purchase money Price failed to give or tender to Powell security, satisfactory or otherwise. After repeated demands for what he claimed to be still owing on the payment due him on January 10, 1906, and for security for the balance of their price, Powell, on May 28, 1906, during the absence of Price, who had been arrested in another matter, took possession of the contents of the livery stable. On June 5, 1906, a judgment was entered against Price in favor of Clawson, by confession, for $531.08 on a note given by the former to the latter under date of March 22, 1906; and, on the same day, the chattels of which Powell had taken possession were seized by the sheriff in execution under that judgment. Upon these facts binding instructions for a verdict in favor of the plaintiff were proper.

It is conceded that the agreement between Powell and Price effected a conditional sale by the former to the latter of the chattels in controversy. As far as concerned his creditors, this vested the title to the contents of the livery stable in Price, and so long as they were in his possession they might have been seized by the sheriff under execution against him. But, as between themselves, the rights of the parties to this transaction were governed by the written contract, and their agreement that the title to the chattels should not pass until they were paid for or until payment of the unpaid purchase money was secured, was valid and binding upon them: Haak v. Linderman, 64 Pa. 499; Brunswick & Balke Co. v. Hoover, 95 Pa. 508. Under that agreement the title to the articles in dispute continued in Powell, and until Price had paid or given security for what he owed on them, or the rights of bona fide purchasers or execution creditors had intervened, he had the right to resume possession of them, if he could do so peaceably, or, by appropriate proceedings at law, to compel their return: Krause v. Commonwealth, 93 Pa. 418. The present case is ruled by

the decision in Hineman v. Matthews, 138 Pa. 204. It was there held that where one who had sold goods on condition that their title should not pass until he was paid for them permitted the vendee to take them before the day for payment, but subsequently on default of payment on the day appointed took them back into his exclusive possession, the goods could not afterwards be lawfully seized in execution as the vendee's property. The facts of that case are quite analogous to those involved in the case at bar. Price's right to the chattels which he had agreed to buy was defeasible by the terms of his contract. Before Clawson appeared upon the scene Powell, acting strictly within his contract rights, retook the property. It would seem that he should now repay to Price all that he had received from the latter on account of the purchase money in excess of the sum of $1,000, but, however that may be, Price's rights in and to the chattels were ended on May 28, 1906, eight days before the levy of the execution of the defendant in this issue. Since no lien had attached in favor of Clawson, when, by retaking the chattels contained in the livery stable, in pursuance of his contract rights, Powell eliminated Price from further connection with them, and since there is no evidence that this step was taken in collusion with Price for the purpose of defrauding the latter's creditors, Clawson's execution did not bind the chattels, whose title is now in issue. "An ordinary sale of personal property by the defendant in an execution, if made in good faith before the writ comes in the hands of the sheriff, is good, even though it be made at an earlier hour of the same day. . . . If this be true of a voluntary transfer, much more must it be of an involuntary one which is enforced according to the terms of a previously existing contract on which the goods are held," per ARCHBALD, J., whose reasoning is approved by the Supreme Court in Durr v. Replogle, 167 Pa. 347.

The defendant's motion for a new trial is overruled and judgment may be entered in favor of the plaintiff on the verdict.

*Error assigned* was in giving binding instructions for Powell.

*Daniel W. Simkins,* for appellant.—The title passed to Price: Frech v. Lewis, 218 Pa. 141; Burt v. Kennedy, 3 Penny. 238, Bowen v. Burk, 13 Pa. 146; Leedom v. Philips, 1 Yeates, 527.

*John Creth Marsh,* for appellee.—Price failed to carry out his agreement and Powell was in undisputed possession and control of the goods before the rights of third parties intervened: Hineman v. Matthews, 138 Pa. 204; Durr v. Replogle, 167 Pa. 347.

OPINION BY HEAD J., February 26, 1909:

Powell was the owner of a number of horses, coaches, sleighs and other chattels with which he operated a boarding and livery stable in Philadelphia. The business was conducted under the name of H. L. Collins, manager. In December, 1905, he made an agreement with one Price to sell to him all of said property. The agreement was reduced to writing and executed by the parties. As the integrity of the writing is in no way assailed, the terms and conditions of sale are fixed, and it becomes a question of legal construction to determine what rights were conferred, what obligations imposed on the parties by the contract they made. The purchase money was $5,000. One thousand dollars were to be, and were, paid on the execution of the agreement. A second payment of like amount was to be made on or before January 10, 1906. It was further provided, "that the title of the said goods and chattels shall remain in said Powell and that said business shall be continued in the name of H. L. Collins, Manager. The said Powell, however, covenants and agrees to give title and possession and to make delivery of seisin to said Price upon said Price making the said second payment of $1,000 and giving to said Powell security, satisfactory to said Powell for the balance of the purchase price," etc.

That the second payment was not made on time is conceded, but partial payments were made on account and accepted and extensions given until the end of May, 1906. A meeting was had on May 26, when the account was gone over. The parties differ as to the result arrived at. Price testifies the account

showed he had fully paid the second payment. Powell asserts there was then still due a balance of more than $200 and that he gave Price until the next day to pay. However this disputed fact may be, it is clear that Price never gave or tendered to Powell the security for the balance of the purchase money, required by his contract. Until he did this he could not assert, as against Powell, possession or the right of possession of the property in the teeth of the contract out of which alone sprang any rights he had. On May 31, 1906, Powell resumed full possession of the property, terminating any partial possession which Price, or his employees, had been permitted to take while he was making payments on account.

The contract, whilst it provided for a retained possession by the vendor, was perfectly valid and binding between the parties. No principle of law or rule of policy forbids the making of such a contract. There was no moral or legal obligation resting on Powell to turn over his property to a stranger who had neither paid nor secured the price of it. No court of law or equity would aid Price in enforcing his claim to possession until he had performed the condition which must precede his right. Frech v. Lewis, 218 Pa. 141, and other cases cited in appellant's brief have no application because they dealt with transactions where a retained possession was neither contemplated nor provided for. We are satisfied, therefore, Price could not have successfully challenged the possession of Powell, as matters stood on May 31, 1906.

On that day no intervening right had vested in anybody. On June 5 following Clawson caused a judgment, on a note with warrant of attorney, to be entered against Price. An execution issued and the property in question was levied on as the property of Price. Powell claimed it and an issue was duly framed to try the title. The learned trial judge gave binding instructions in favor of Powell, the defendant, and Clawson appealed.

That Clawson could not, by his later levy, successfully assail the rights of Powell, long before intrenched in possession under a clear legal right, is ruled in Hineman v. Matthews, 138 Pa. 204; Durr v. Replogle, 167 Pa. 347. The former is practically "on

all fours" with the case at bar. This is clearly pointed out in the careful and satisfactory opinion of the learned trial judge refusing a motion for a new trial, which, fully, we think, vindicates the judgment he entered.

Judgment affirmed.