## STEWART v. PLATT.

1. A mortgage of goods and chattels in the State of New York, which is not accompanied by an immediate delivery and followed by an actual and continued possession of them, is void as against the creditors of the mortgagors, subsequent purchasers, and mortgagees in good faith, if it be executed by a firm the members of which reside there, unless, pursuant to the statute, it be filed in the city or town where they respectively reside.

2. A failure so to file it does not impair its validity as between the mortgagee and the mortgagors, or the assignee in bankruptcy of the latter.

3. Where a controversy arose between the assignee in bankruptcy of the mortgagors, their execution creditors, and the mortgagee, touching the application of the fund in court derived from the sale of the personal property covered by a mortgage which was not so filed, — Held, that the creditors are entitled to payment, and that the residue of the fund, the same not being more than sufficient to satisfy the mortgage debt, belongs to the mortgagee, and is not chargeable with any expense incurred by the assignee in the execution of his trust.

4. Where property, conveyed to the wife under a valid settlement made by the husband, was by their joint act afterwards appropriated to the payment of one of his creditors, — Held, that subsequent creditors and his assignee in bankruptcy could not rightfully complain.

5. The bankrupt law does not prohibit an insolvent debtor from dealing with or exchanging his property before proceedings in bankruptcy are instituted against him, provided there be no purpose to defraud or delay his creditors, or to give a preference to any one, and the value of his estate is not thereby impaired.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree whereby the distribution of a fund in court was ordered, and certain conveyances of real estate declared to be void as in violation of the provisions of the bankrupt law.

The record presents the following facts, in addition to those stated in the opinion of the court: —

By an indenture executed April 30, 1867, Alexander T. Stewart leased to Simeon Leland, Warren Leland, and Charles Leland, copartners, the Metropolitan Hotel, in the city of New York, for the term of four years from that date, at an annual rent of $79,186, payable in equal monthly instalments. One of the conditions of the lease was that, simultaneously with its delivery, the rent reserved should be secured by the lessees

giving a first mortgage and lien upon their household furniture and chattels of every description then contained in, and used for the purposes of, the hotel; and also that they should every year during the term, and within thirty days prior to the thirtieth day of April therein, renew such mortgage, and execute an additional one, covering all property of the like kind used at its date in the hotel for hotel purposes, including that described in the first mortgage.

The lessees accordingly executed and delivered to Stewart a first mortgage upon the property described, dated April 30, 1867, which they acknowledged June 11. It was filed September 2 in that year in the office of the register of deeds for the city and county of New York. Among its stipulations was one that in case of default in the payment of rent, at the times and in the manner specified in the lease, the lessor might " take and carry away the said goods and chattels," dispose of them at the best price he could obtain, and apply the proceeds in satisfaction of the rent due and unpaid. As required by the lease, mortgages in renewal, and in addition containing similar conditions, were executed by the lessees during the subsequent years of the term, and filed in the same office.

At the respective dates of the several chattel mortgages, as well as during the entire term of the lease, Simeon Leland resided with his family at New Rochelle, in Westchester County, New York, where he had resided since 1850; Warren Leland resided with his family in the same county, and had resided there since 1857; and Charles Leland then and for the ten or twelve previous years resided with his family at Mt. Vernon, in the same county.

None of the mortgages were filed in the towns where the lessees resided with their families.

In pursuance of an arrangement made in January, 1871, between the lessees and Stewart, the former caused conveyances to be made to the latter as follows: 1st, Certain houses and lots on Crosby and Jersey Streets in New York City, at the price of $10,000, by conveyance from George S. Leland, dated Jan. 23, 1871, acknowledged and recorded in the proper office on the following day; 2d, Certain houses and lots on Prince Street, in the same city, at the price of $14,000, by conveyance

from George S. Leland, dated Feb. 9, acknowledged Feb. 13, and recorded Feb. 15, 1871; 3d, An improved farm in the town of Harrison, Westchester County, at the price of $19,500, by conveyance from Warren Leland and wife, dated Feb. 1, acknowledged Feb. 2, and recorded Feb. 24, 1871.

The real estate conveyed by George S. Leland was the property of the lessees or of some of them, the legal title having been transferred to him, as was claimed, for the convenience of the real owners when they should sell to others.

The farm conveyed by Warren Leland and wife was purchased by him in 1866, and in pursuance of his directions conveyed to her in 1868.

There were at the time of these transactions unsatisfied mortgages for large sums upon all the real estate. Stewart took it subject to them, but without assuming to pay the debts thereby secured.

During the months of February and March, 1871, numerous creditors obtained judgments against the lessees, in the courts of New York, and sued out executions, which were levied upon the property covered by the chattel mortgages. The judgments were also docketed in the proper offices in New York City and in Westchester County, so as to create a lien upon the real estate of the lessees. The first, in point of time, of these executions was issued February 3, and the last March 29, in that year.

Upon the petition of one of their creditors, filed March 24, 1871, the lessees were duly adjudged bankrupts April 1, 1871. Under an order of the bankrupt court, directing possession to be taken of their property, the marshal took into his custody that covered by the chattel mortgages to Stewart. It was inventoried at $47,253.92, and under subsequent orders of the court was sold at public auction, bringing the sum of $43,469.31. After paying sundry expenses there remained at the date of the decree in the District Court about $26,867.29, subject to distribution.

This suit was commenced in the District Court May 26, 1871, by the assignee in bankruptcy of Simeon, Warren, and Charles Leland, against them, their judgment creditors, Stewart, and others. The bill, besides seeking the distribution of

that fund, assails as invalid, not only the several chattel
mortgages and the conveyances of the real estate heretofore
described, but also the judgments obtained in February and
March, 1871.  The assignee claimed that he was entitled to
the fund in court, and also to the proceeds of the sale of the
real estate, for distribution among all the creditors of the
bankrupts, without any preference among them, except one
Ramaley, who was conceded to be entitled upon his judgment
to priority.

The court, upon final hearing, held that the chattel mortgages
as well as the conveyances of real estate were void as against
the assignee in bankruptcy.  Stewart was ordered to convey
the real estate to the assignee, and he was adjudged to be
liable for the net rents and profits arising from the same subse-
quently to the execution of the several conveyances.  The
court also held that the judgments obtained against the bank-
rupts within four months preceding the commencement of the
bankruptcy proceedings were void as against the assignee,
and by its further order prohibited Stewart and the judg-
ment creditors from proving their claims in the bankrupt
court.

An appeal was taken to the Circuit Court, pending which
Stewart died.  His representatives were made parties to the
proceedings.  The decree of the District Court as to the chattel
mortgages and the conveyances of the real estate was affirmed,
and reversed only as to the creditors who had obtained judg-
ments against the lessees within four months prior to March
24, 1871.  The court held that the several judgments had not
been obtained in violation of the bankrupt law, and that the
claim upon the fund in court, asserted by the creditors, whose
executions had been levied prior to the commencement of the
proceedings in bankruptcy, was superior to the respective
claims of Stewart and the assignee.

From that decree this appeal is prosecuted by the devisee
and the executors of Stewart.

The case was argued by *Mr. Roscoe Conkling* for the appel-
lants, and by *Mr. A. H. Dana* and *Mr. Dennis McMahon* for
the appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

The objects of this suit, so far as they concern the appellants, were, —

1st, To obtain the distribution of the fund arising from the sale of furniture and other personal property in use in the Metropolitan Hotel, in the city of New York, at the commencement of the proceedings in bankruptcy. The Lelands were lessees of that hotel under a written lease from A. T. Stewart, dated April 30, 1867, for a term of four years thereafter, at an annual rent of $79,186, payable in equal monthly instalments. Upon the property thus sold Stewart held, as security for rent reserved by the lease, several chattel mortgages executed by the Lelands, the validity of which was questioned in this suit. by the assignee in bankruptcy.

2d, To have a decree declaring sundry judgments against the bankrupts within four months prior to the adjudication in bankruptcy, as well as certain conveyances of real estate to Stewart, to be, as against the assignee, invalid under the provisions of the bankrupt law.

The first question to which we will direct our attention relates to those several chattel mortgages.

The District and Circuit Courts concurred in opinion that they were not filed in the office designated by the statutes of New York, and, upon that ground, were ineffectual to give the security and lien contemplated by the parties, and void as against the assignee.

By the laws of New York it is provided that every mortgage or conveyance, intended to operate as a mortgage of goods and chattels, which should not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, should be absolutely void, as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the act. The statute requires such mortgages to be filed in the town or city where the mortgagor, " if a resident of that State, shall *reside* at the time of the execution thereof; and if not a resident, then in the city or town where the property so mortgaged shall be at the time of the execution of such instrument."

In the city of New York, the mortgage is directed to be filed in the office of the register of said city; in other cities of the State, and in the several towns thereof in which a county clerk's office is kept, in such office; and, in each of the other towns of the State, in the office of the town clerk thereof. Registers and clerks are required to file such instruments, presented to them for that purpose, and indorse thereon the time of receiving same, and keep them deposited in their offices for the inspection of the persons interested.

It is further provided that every mortgage filed in pursuance of the statute should cease to be valid against the creditors of the mortgagor, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of each and every term of one year after the filing of the mortgage, a true copy thereof, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him in virtue thereof, shall be again filed in the office of the clerk or register aforesaid of the town or city where the mortgagor shall then *reside*.

The bankrupts resided with their families in the county of Westchester at the respective dates of the several chattel mortgages, but the business of the firm of Simeon Leland & Co., as lessees of the Metropolitan Hotel, was carried on in the city of New York, and all the property covered by the mortgages was in use in that hotel. The mortgages were filed in the office of the register of deeds for the city and county of New York, and were not filed in the towns where the lessees respectively resided with their families. The contention of learned counsel for the appellants is that *the firm* was the mortgagor, that *its* residence or domicile was in the city of New York, and that the manifest object of the statute was met by filing the several mortgages in the city where the firm carried on its business. The question thus presented is within a very narrow compass, and is not free from difficulty. Its solution depends upon the meaning of the word "reside" employed in the statute. It is to be regretted that we are not guided by some direct controlling adjudication in the courts of New York construing the statute under examination. But no

such decision has been brought to our attention. With some hesitation we have reached the conclusion that a chattel mortgage, executed by a firm upon firm property, is void, under the New York statute, as against creditors, subsequent purchasers, and mortgagees in good faith, unless filed in the city or town where the individual members of the firm severally reside. The statute upon its face furnishes persuasive evidence that its framers intended to make a sharp distinction between the place where the property might be at the time of the execution of the mortgage and the place of the mortgagor's residence. If he be a non-resident of the State of New York, the mortgage may be filed in the town or city where the property shall be at the time of the execution of the mortgage. If he be a resident, then his residence, not the actual *situs* of the property, governs. If these instruments be executed by several resident mortgagors, the statute would seem to require that the mortgage be filed in the towns or cities where the mortgagors at the time respectively reside.

Some stress is laid upon the fact that in each of the mortgages the mortgagors are described as " of the city of New York." If that is to be regarded as a representation by them that their fixed abode was in that city, it is obvious that the statute designed for the protection of creditors, subsequent purchasers, and mortgagees in good faith cannot be thus defeated. Their rights depend not upon recitals or representations of the mortgagors as to their residence, but upon the fact of such residence. The actual residence controls the place of filing, otherwise the object of the statute would be frustrated by the mere act of the parties, to the injury of those whose rights were intended to be protected. The recital of the residence in the mortgage " seems to be of no importance, and might for the matter of security be omitted altogether." Nelson, C. J., in *Chandler* v. *Bunn*, Hill & D. Supp. (N. Y.) 167.

A good deal was said in oral argument as to the serious inconveniences which may result from any construction of the statute that requires chattel mortgages executed by a firm upon its property to be filed elsewhere than in the town or city where the property is used, and where the firm business is conducted. On the other hand, it is quite easy to suggest reasons

of a cogent character why, in view of the manifest purpose of such legislation, the actual residence of the mortgagors should determine the place of filing. But these are considerations to be addressed more properly to the legislature of New York, with whom rests the power to make such alterations as experience may suggest to be necessary. The statute expressly declares that a chattel mortgage not filed as required by its provisions is void as to creditors and subsequent purchasers and mortgagees in good faith; and the circuit justice well said that the statute had "imposed a rigid and unbending condition, to wit, a filing in the place where the mortgagors actually reside, as a preliminary to the validity of the mortgage. Whether this condition is wise or not, whether convenient or difficalt of performance, is not for the courts to say. The statute exacts it, and the courts must see that it is performed." Upon this branch of the case, therefore, we concur in opinion with the Circuit Court.

It follows, necessarily, from what has been said, that the Circuit Court rightly adjudged that creditors who obtained judgments and sued out executions against the Lelands, previous to the commencement of bankruptcy proceedings, had prior claims and liens upon the proceeds arising from the sale of the property covered by the chattel mortgages.

But the final decree in the Circuit Court is erroneous in directing the residue of the proceeds of the sale of the mortgage property, after satisfying execution creditors, "to be paid to the assignee (in bankruptcy) for the purposes of the trust," and in charging that balance with the payment of the fees due counsel of the assignee.

In *Yeatman* v. *Savings Institution* (95 U. S. 764), we held it to be an established rule that, "except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens, or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. *Brown* v. *Heathcote*, 1 Atk. 160; *Mitchell* v.

*Winslow*, 2 Story, 630; *Gibson* v. *Warden*, 14 Wall. 244; *Cook* v. *Tullis*, 18 id. 332; *Donaldson, Assignee*, v. *Farwell*, 93 U. S. 631; *Jerome* v. *McCarter*, 94 id. 734.   He takes the property in the same 'plight and condition' that the bankrupt held it.   *Winsor* v. *McLellan*, 2 Story, 492."

The decree below is plainly in contravention of this rule. Although the chattel mortgages, by reason of the failure to file them in the proper place, were void as against judgment creditors, they were valid and effective as between the mortgagors and the mortgagee.   *Lane* v. *Lutz*, 1 Keyes (N. Y.), 213; *Wescott* v. *Gunn*, 4 Duer (N. Y.), 107; *Smith* v. *Acker*, 23 Wend. (N. Y.) 653.   Suppose the mortgagors had not been adjudged bankrupts, and there had been no creditors, subsequent purchasers, or mortgagees in good faith to complain, as they alone might, of the failure to file the mortgages in the towns where the mortgagors respectively resided.   It cannot be doubted that Stewart, in that event, could have enforced a lien upon the mortgaged property in satisfaction of his claim for rent.   The assignee took the property subject to such equities, liens, or incumbrances as would have effected it, had no adjudication in bankruptcy been made.   While the rights of creditors, whose executions preceded the bankruptcy were properly adjudged to be superior to any which passed to the assignee by operation of law, the balance of the fund, after satisfying those executions, belonged to the mortgagee, and not to the assignee for the purposes of his trust.   The latter representing general creditors, cannot dispute such claim, since, had there been no adjudication, it could not have been disputed by the mortgagors. The assignee can assert, in behalf of the general creditors, no claim to the proceeds of the sale of that property which the bankrupts themselves could not have asserted in a contest exclusively between them and their mortgagee.   As between the mortgagors and the mortgagees, the chattel mortgages were and are unimpeachable for fraud, or upon any other ground recognized in the bankrupt law.

It results that the court below erred in directing the fees of the assignee's counsel to be paid out of the residue of the fund in court remaining after the claims of execution creditors were satisfied.   To that balance the appellants are entitled without

diminution, to be applied in payment of the rent remaining unpaid, after crediting thereon $43,500, the agreed valuation of the real estate conveyed to Stewart, and to which we will presently refer in another connection. It was error to charge that balance with the payment of costs of fees of counsel, or any expense incurred by the assignee in bankruptcy in the administration of his trust.

We come now to the questions relating to the several conveyances of real estate made to Stewart in January and February, 1871; all of which were adjudged by the Circuit Court to be void as against the assignee in bankruptcy.

It is important to consider the circumstances under which those conveyances were made. Early in the month of January, 1871, commenced a series of interviews between the lessees and Stewart, brought about, perhaps, by the demand of the latter, through his agent, for the settlement of rent in arrear, which then amounted to about $50,000. The lessees desired a new lease at a reduced rent, while Stewart insisted upon the payment, or a satisfactory arrangement, of the rent due him. They confessed present inability to discharge the indebtedness in any other mode than by conveyances of real estate, which they urged him to take at fair valuation and give a new lease at reduced rent. They, in those interviews, expressed the utmost confidence that such an arrangement would relieve them from all immediate financial burdens, growing out of the hotel business, and enable them to meet promptly thereafter not only instalments of rent, but all other engagements. Stewart, finally, agreed, for the accommodation of his lessees, to accept certain real estate, offered to him at the aggregate price of $43,500, in satisfaction of a like amount of back rent, and, necessarily, in extinguishment to that extent of his mortgages upon the furniture and other property in the hotel building. He also signified his willingness to renew the lease to the same parties, at the reduced rent of $65,000. In pursuance of this arrangement the lessees, or some of them, caused conveyances to be made to Stewart of the real estate in question, consisting of a farm in Westchester County, and several houses and lots on Crosby, Jersey, and Prince Streets, in New York City.

We are all of opinion that the conveyance, dated Feb. 1, 1871, by Mrs. Warren Leland and her husband of the farm in Westchester County, was unassailable by the assignee upon any ground whatever. That property was a gift from the husband to the wife at a time when his right to make it cannot be disputed. As early as 1868 it was distinctly separated from the mass of his property, and the title made to her for her benefit. There is no proof that the conveyance was with any intention to defraud his then existing or future creditors. Of those whose interests the assignee in bankruptcy here represents, or assumes to represent, none, except perhaps one, were creditors of Warren Leland at the date of that conveyance. The bill alleges that the bankrupts, or some of them, intended to give Stewart a preference over other creditors, and to that end, it is charged, Warren Leland caused the conveyance to be made to his wife of the farm in question, " owned by the said Warren Leland, but standing in the name of his wife." But clearly it was not owned by the husband after the execution of the absolute conveyance of 1868. Her rights, by reason of any thing appearing in this record, could not be disturbed by the husband's creditors who became such after the execution of the conveyance to her. She chose, in order to aid her husband, or for other reasons satisfactory to herself, to unite with him in the conveyance to Stewart, thereby surrendering her estate for the benefit of the husband's creditor. Suppose she had not so done, and that the title had remained in her name up to the time of the adjudication in bankruptcy. Would it be contended, for a moment, that the assignee in bankruptcy, or that the creditors of the bankrupts, becoming such after the execution of the conveyance, could have subjected that farm to the debts of Warren Leland against the consent of his wife ? This question must, in view of the evidence, receive a negative answer, which shows, conclusively, that the appropriation of the wife's property, by the joint act of herself and husband, to the payment of the debt of a particular creditor of the latter, is not a matter of which the assignee in bankruptcy, or any subsequent creditor of the husband, can rightfully complain. The decree of the Circuit Court declaring the conveyance of that farm to Stewart to be void, and

requiring Mrs. Stewart to convey to the assignee in bankruptcy, was, for the reasons stated, clearly erroneous.

It remains to consider that part of the decree which declared the conveyances to Stewart of the houses and lots on Crosby, Jersey, and Prince Streets, in New York City, to be void.

When these conveyances were agreed to be made, Stewart, as already stated, had an undisputed claim for rent in arrear amounting to over $50,000. Under the provisions of the mortgages, a default in the payment of rent having taken place, Stewart, at the time the exchange was determined upon, could have taken actual possession of the mortgaged property and sold it for the best price he could obtain in satisfaction of his claim for rent. His right to possession for such a purpose could not have been questioned by any creditor of the lessees who had not, by previous judgment and execution, acquired a lien upon the mortgage property. *Burdick* v. *McVanner*, 2 Den. (N. Y.) 170; *Stewart* v. *Slates*, 6 Duer (N. Y.), 83; *Hall* v. *Sampson*, 35 N. Y. 274; *Ackley* v. *Finch*, 7 Cow. (N. Y.) 290; *Langdon* v. *Buel*, 9 Wend. (N. Y.) 80; *Patchin* v. *Pierce*, 12 id. 61. Instead of exercising that right, — a course which would have seriously endangered, if it had not utterly destroyed, the business and credit of the lessees, — Stewart, at their earnest solicitation, and for their accommodation, accepted real estate at a fair valuation in satisfaction of rent due and unpaid, thereby surrendering and extinguishing his lien to that extent upon the property described in the chattel mortgages. Of the $43,500 at which the real estate received by Stewart was valued, $19,500 represented the farm in Westchester County, which, we have shown, could not have been subjected to the claim of any creditors who became such after the conveyance to Mrs. Leland. In point of fact, therefore, only $24,000 in value of real estate, belonging to the bankrupts, was received by Stewart, while he surrendered his claim and lien for rent to the extent of $43,500. This was, in its substance and effect, a mere exchange of securities, not forbidden by the letter or the spirit of the bankrupt law. In *Cook* v. *Tullis* (18 Wall. 332), we said that " a fair exchange of values may be made at any time, even if one of the parties to the transaction be insolvent. There is nothing in the Bankrupt Act, either in its language or

object, which prevents an insolvent from dealing with his property, selling it or exchanging it for other property, at any time before proceedings in bankruptcy are taken by or against him, provided such dealing be conducted without any purpose to defraud or delay his creditors or give preference to any one, and does not impair the value of his estate. An insolvent is not bound in the misfortune of his insolvency to abandon all dealing with his property ; his creditors can only complain if he waste his estate or give preference in its disposition to one over another. His dealing will stand if it leave his estate in as good plight and condition as previously." Substantially the same doctrine was announced in *Clark* v. *Iselin*, 21 Wall. 360; *Sawyer* v. *Turpin*, 91 U. S. 114.

These principles would seem to be decisive of the case under consideration. While there is some conflict in the testimony as to certain matters, we have a strong conviction, from all the facts and circumstances established by the proof, that the transaction by which the real estate, at a fair valuation, was substituted for the lien, of like amount, upon personal property, was without any fraudulent purpose. The substitution was not made to give a preference to Stewart. The belief and hope of the bankrupts, expressed in decided terms to him, were that the substitution or exchange would enable them to remove all financial obstacles of a serious nature: They induced him, by earnest representations, to share these hopes. He delayed or forebore to exercise the right, which, at the commencement of negotiations, he undoubtedly had, of taking the mortgaged property into his custody, and disposing of it in satisfaction of his claim for rent. That the arrangement in question did not substantially impair the value of the bankrupts' estate is abundantly clear. His lien, which was extinguished by the exchange, exceeded, in value, that portion of the real estate, embraced in the conveyances to him, which the creditors of the bankrupts could have reached under their executions. The fact that the mortgaged property brought only $43,469.31, is relied upon to show that the exchange did impair the estate of the bankrupts. This argument proceeds upon the assumption either that when the exchange was determined upon, he had not a lien upon the mortgaged property, as

between him and the mortgagors, or that if he had, he would not have enforced it by taking the property into his custody, upon a refusal of the lessees to make some satisfactory arrangement.   But such assumption is without support in the law or the proof.   Besides, the evidence leads to the conclusion that the mortgaged property sold, at public auction, for less than its fair value.   While the witness, who made the inventory and appraisement, testifies that it sold for its full value, the auctioneer, who conducted the sale, testified that with proper appliances it would have brought fifty per cent more.   It is certain that it sold for much less than either the lessees or Stewart at the time of their negotiations supposed it to be worth.

For these reasons we are of opinion that the court below erred in adjudging the conveyances to Stewart of the houses and lots on Crosby, Jersey, and Prince Streets, in New York, to be void, requiring Mrs. Stewart to convey the same to the assignee in bankruptcy, and declaring his estate liable for the rents and profits of the same.

*Decree reversed, with directions to enter a decree in conformity with this opinion.*

MR. JUSTICE FIELD, with whom concurred MR. JUSTICE SWAYNE and MR. JUSTICE BRADLEY, delivered the following opinion : —

I concur in the decree of reversal in this case, but I go further than the majority of the court.   I think that the chattel mortgages were properly filed with the register in the city of New York.   The mortgagors were partners doing business there.   They are described in the mortgages as of that city.   The property mortgaged was furniture in a hotel situated there, and it is to the records of the city that one would naturally resort to ascertain whether there were any liens upon it. The domicile of a firm, under the law requiring chattel mortgages to be filed in the county where the mortgagors reside, is, in my judgment, the place where it is located and carries on its business.   I am of opinion, therefore, that the chattel mortgages in this case held the property against the judgments of the creditors.