## Christ, Appellant, *v.* Zehner.

*Bankruptcy—Federal act—Preference—Bill of sale—Delivery of possession.*
Where a bill of sale of a stock of goods is given for money loaned and to be advanced without possession of the goods being taken, but more than four months afterwards, and within four months from the institution of bankruptcy proceedings against the vendor, there is indorsed on the bill of sale a statement to the effect that the loan is still due, and that possession is hereby given, the title to the goods will be deemed to have passed by the original bill of sale without any unlawful preference.

Argued Feb. 14, 1905. Appeal, No. 204, Jan. T., 1904, by plaintiff, from order of C. P. Schuylkill Co., May T., 1903, No. 300, refusing to take off nonsuit in case of Charles E. Christ, Trustee of the Estate of Emma C. Kintz, trading as Kintz & Co., v. Jacob Zehner. Before DEAN, FELL, MESTRE-ZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit to recover money alleged to have been derived from an unlawful preference. Before MARR, J.

The facts are stated in the opinion of the Supreme Côurt.

The court granted a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was order refusing to take off nonsuit.

*Wesley K. Woodbury* and *John F. Whalen,* for appellant.— A bill of sale without transfer of possession is a fraud in law and void against creditors : Stephens v. Gifford, 137 Pa. 219 ; Weller v. Meeder, 2 Pa. Superior Ct. 488.

Transfers before four months in fraud of creditors vest property in the trustee: Act of Congress, 1898, sec. 70, clause 4; In re Charles D. Adams, 1 Am. Bank Rep. 94; In re Julius Grahs, 1 Am. Bank Rep. 465; In re Gray, 3 Am. Bank Rep. 647.

The question of intent is for the jury : Collier on Bankruptcy, 4th edition, 35; In re Bloch, 6 Am. Bank Rep., 300, 109 Fed. Repr. 790.

This case is ruled by Crawford v. Rumpf, 205 Pa. 154.

*J. O. Ulrich,* for appellee.—There was no unlawful preference : Miller v. Shriver, 197 Pa. 191 ; Furth v. Stahl, 205 Pa. 439.

OPINION BY MR. JUSTICE POTTER, May 22, 1905 :

Previous to July, 1901, Emma C. Kintz, trading as Kintz & Company, carried on a general store business at Tamaqua, Pennsylvania. Her husband, David Kintz, managed the store under a general power of attorney for his wife. In July, 1901, Kintz & Company owed considerable money, and were alleged by plaintiff to have been insolvent. On July 5, 1901, Mrs.

Kintz gave her judgment bond to Jacob Zehner, the defendant, for the sum of $1,200, the date of payment being left blank. This was not entered of record. On the same date she also gave to Zehner a bill of sale for the entire contents of her store for the consideration of $1,200 " to have and to hold the said goods and chattels for the use, ownership and behoof of the said Jacob Zehner until he is paid the sum of $1,200 this day borrowed from him. To secure this loan this bill of sale is made." The following writing, also dated July 5, 1901, and signed by Mrs. Kintz, was indorsed on the bill of sale : " To secure Jacob Zehner for a loan $1,200 made me this day, I have executed in his favor an assignment of a judgment against Matilda Kintz of Weatherly, Carbon county, Pennsylvania, etc. Also a bill of sale of the goods, etc., of Kintz & Company and a judgment bond, all of even date, and to be returned, assigned and canceled on the full payment of said loan."

The testimony of David Kintz, who was called as a witness by plaintiff, showed that a consideration of $1,200 for the bond, bill of sale, etc., was paid by Zehner at or about the time they were executed, and that Zehner had also indorsed a note of Kintz & Company, for $545 which was held by the bank. Zehner did not take possession of the business or of the contents of the store at the time the bill of sale was executed and delivered, but the same remained in the possession of Kintz & Company and the business went on as before under the management of David Kintz.

On January 25, 1902, Mrs. Kintz, trading as Kintz & Company, executed and delivered to Zehner a writing which was indorsed on the original bill of sale as follows : " Whereas the above mentioned sum of $1,200 due Jacob Zehner is still due and unpaid, and whereas the said Jacob Zehner has indorsed notes amounting to $545 in favor of Kintz & Company, which notes Kintz & Company cannot pay at maturity ; therefore, full possession of the stock, goods and fixtures of Kintz & Company is this day given to Jacob Zehner absolutely as full owner thereof."

At this date Kintz & Company were admittedly insolvent. No money was paid by Zehner when this last power was executed. Zehner at once took possession of the store. The signs were changed, and the business was continued in Zehner's

name. David Kintz remained as manager, and the other employees were retained. The business was conducted in this way until January 25, 1903, after which the store was closed for a couple of months, when it was transferred to David Kintz individually, he having meanwhile obtained a discharge in bankruptcy.

On May 17, 1902, a petition in involuntary bankruptcy was filed against Emma C. Kintz, trading as Kintz & Company, and on February 11, 1903, she was duly adjudicated a bankrupt. Charles E. Christ was appointed trustee, and as such trustee brought the present suit against Jacob Zehner to recover the sum of $2,200.78 (alleged to be the value of the stock of goods turned over to Zehner on January 25, 1902, and $299.22 collected by him from book accounts of Kintz & Company turned over to him at the same time), on the ground that the transfer of the goods and books constituted, under the bankrupt law, a preference given less than four months before the filing of the petition.

Upon the trial of this case a compulsory nonsuit was entered which the court in banc refused to take off. The refusal to take off the nonsuit is assigned as error.

In the opinion filed the court below held that the title to the goods sold to the defendant passed with the delivery of the bill of sale of July 5, 1901, more than four months before the institution of the bankruptcy proceedings, and at a time when defendant had no knowledge nor reason to believe that Kintz & Company were insolvent, and that the bill of sale, therefore, did not constitute an unlawful preference. It is claimed by appellant that the title to the goods did not pass until the delivery of possession on January 25, 1902, which was within the four months and after the defendant had knowledge of the insolvency of Kintz & Company. In so far as the bill of sale of July 5, 1901, is concerned, it clearly did not constitute a preference. It was outside the statutory period of four months. Nor is there any evidence that defendant had reasonable cause to believe that a preference was intended. The consideration for the bill of sale was not an antecedent debt, but it was money paid at the time and to be paid in the future.

The only question remaining, then, is as to when the title to

the property of the bankrupt actually passed. Was it when the bill of sale was executed and delivered, or when possession of the goods was actually given? The authorities cited by the trial judge seem to fully sustain his conclusion that the property was transferred when the bill of sale was executed and delivered. In addition to the cases cited, the decisions of the supreme court of the United States seem to meet the identical question involved. In the case of Sawyer v. Turpin, 91 U. S. 114, it was held that an exchange of a chattel mortgage within four months of the filing of a petition in bankruptcy, for a bill of sale given by the bankrupt more than four months prior to that date for the same articles, was valid against the assignees in bankruptcy, although the bill of sale was not recorded and possession was not given thereunder. Justice STRONG there said, on page 118 : " The conveyance was by a bill of sale absolute in its terms, having no condition or defeasance expressed, but it was understood by the parties to be a security for the debt due. It was, in substantial legal effect, though not in form, a mortgage. Having been executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True, it was not recorded, and it may be doubted whether it was admissible to record. True, no possession was taken under it by the vendee ; but for neither of these reasons was it the less operative between the parties. It might not have been a protection against the attaching creditors, if there had been any ; but there were none. It was in the power of Turpin to put it on record any day, if the recording acts apply to such an instrument, and equally within his power to take possession of the property at any time before other rights against it had accrued. These powers were conferred by the instrument itself, immediately on its execution." So also in Stewart v. Platt, 101 U. S. 731, it was held that an assignee in bankruptcy took the property of the bankrupt subject to chattel mortgages, executed and delivered by them more than four months before the filing of the petition, but not recorded as required by law. This was followed in Hauselt v. Harrison, 105 U. S. 401, and in Adams v. Collier, 122 U. S. 382. In the case last cited, Justice HARLAN said (p. 391) that the conveyance which was attacked, being good between the parties, "in the absence of

fraud, could not be questioned by the assignee, who took only such rights as the bankrupt had."

In Collins's Appeal, 107 Pa. 590, Justice GREEN (p. 605) collects the cases showing that possession of the subject of pledge is not necessary to protect the pledgee's title " where the possession of the pledge is by the agreement of the parties to remain with the pledgor."

We can see nothing in the evidence in this case which would constitute an unlawful preference, or which in any way violates the provisions of the bankrupt law. The specifications of error are overruled, and the judgment is affirmed.