### In re EAST END MANTEL & TILE CO.

(District Court, W. D. Pennsylvania. February 5, 1913.)

#### No. 5,890.

1. COURTS (§ 359*)—CONTRACTS—VALIDITY—WHAT LAW GOVERNS.

The law of the state wherein a contract of sale or pledge is made and is to be performed must govern in the bankruptcy court in determining its validity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 359.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. BANKRUPTCY (§ 185*)—CHATTEL MORTGAGES—VALIDITY.

Where a chattel mortgage, unaccompanied by delivery of possession and not recorded, was under the law of the state where made valid as between the parties, and the rights of any creditor of the mortgagor did not attach prior to the taking possession by the mortgagee, the trustee in bankruptcy of the mortgagor, entitled under Bankruptcy Act July 1, 1898, c. 541, § 47, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), to the rights of a levying creditor, was not entitled to the mortgaged chattels.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 234, 235, 273; Dec. Dig. § 185.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

5. BANKRUPTCY (§ 161*)—"PREFERENCE"—ACTS CONSTITUTING.
    Where a chattel mortgage, good as between the parties, fixed the rights
of the mortgagee more than four months prior to the filing of the peti-
tion in bankruptcy of the mortgagor, the taking possession by the mort-
gagee of the mortgaged property within four months did not constitute a
"preference," within the Bankruptcy Law.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261-263;
Dec. Dig. § 161.*
    For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol.
8, p. 7759.]

In the matter of the bankruptcy of the East End Mantel & Tile
Company. Question certified by the referee. Certified question an-
swered in the affirmative, and decision of the referee reversed.

Seymour, Patterson & Siebeneck, of Pittsburgh, Pa., for claimant.
Morris, Walker & Allen, of Pittsburgh, Pa., for trustee in bank-
ruptcy.

ORR, District Judge. The referee has certified to this court the
question:

"Whether Mr. A. C. Robinson is entitled to the fund in the hands of the
trustee as the proceeds of the bankrupt's property under a certain mortgage
thereof and the facts set forth in the report and opinion of the referee hereto
attached."

The referee was of opinion that Mr. Robinson is not entitled to
the fund. The report of the referee contains the following findings
of fact:

"On or about February 15, 1911, Mr. Robinson loaned to the East End Man-
tel & Tile Company, the bankrupt, the sum of $15,000, and received from
the bankrupt company a mortgage covering the real estate of the bankrupt,
being a second mortgage as to the real estate, and also covering all the en-
gines, machinery, safe, leasehold, book accounts, stock, and merchandise of
the East End Mantel & Tile Company. The mortgage was recorded in the
recorder's office of Allegheny county on February 17, 1911. After the execu-
tion of the mortgage a card or tag, stamped with the name of A. C. Robin-
son, was attached to all of the merchandise and personal property of the
bankrupt, who continued, however, in possession of the property, selling the
same and purchasing other stock to take its place, some of which, perhaps,
was marked with the tag bearing Mr. Robinson's name, but much of it was
not so marked. It also appears that in July, 1911, the book accounts, or cer-
tain of them, were stamped on the books with a rubber stamp bearing the
name of A. C. Robinson. After the execution of the mortgage and the tag-
ging of the merchandise and book accounts, as already stated, on or about
July 7, 1911, Mr. Robinson went to the plant and office of the bankrupt and
took possession of the same, and placed a man in charge thereof as his agent.
On July 14, 1911, A. C. Ellis, the present trustee in bankruptcy, was appointed
receiver of the East End Mantel & Tile Company by the court of common
pleas of Allegheny county, and upon visiting the plant of the company found
Mr. Robinson, through his agent, in possession thereof. It was thereupon
agreed between Mr. Robinson and Mr. Ellis that Mr. Robinson should surren-
der possession of the premises to him as receiver of the common pleas court,
and that on the sale of the assets by the receiver that it should be without
prejudice to Mr. Robinson's claim to be the owner of the property and en-
titled to the proceeds of any such sale. Mr. Robinson testifies that it was
understood by him, and agreed, that the East End Mantel & Tile Company,
after the execution of the mortgage and tagging of the goods and book ac-

counts, should continue to dispose of the same as representing him, and account to him."

Nothing was realized out of the real estate. The mere recording of the mortgage gave it no validity as to chattels. The language being in præsenti, it was merely a particular form of a bill of sale.

In addition to the foregoing facts, it must be found that Mr. Robinson made the loan to the bankrupt in good faith. He believed it to be solvent, after financial statements purporting to show the condition of the bankrupt had been submitted to him, although he did not see the books of the bankrupt. And there is the additional fact in the case that, after the appointment by this court of Mr. Ellis as the receiver in bankruptcy, this court substantially approved the contract entered into between Mr. Robinson and Mr. Ellis as receiver appointed by the state court, and in the interests of the estate authorized the receiver to make sale of the assets of the bankrupt without prejudice to the right of Mr. Robinson to the same.

This court is constrained to differ from the referee's conclusion of law upon the foregoing facts, for the following reasons:

First. There being no evidence of bad faith on the part of Mr. Robinson, the contract of sale or of pledge, as the case may be, was good as between the parties under the law of Pennsylvania. Hineman v. Matthews, 138 Pa. 204, 20 Atl. 843, 10 L. R. A. 233; Durr v. Replogle, 167 Pa. 347, 31 Atl. 645; Christ v. Zehner, 212 Pa. 188, 61 Atl. 822. These cases will be hereafter considered, not only as supporting the proposition above advanced, but as conclusive of one hereafter to be stated.

[1] Second. The law of the state wherein such contract was made and is to be performed must govern in the bankruptcy courts. The validity of a bill of sale, unaccompanied by delivery of possession, of a chattel, was under consideration in Sawyer v. Turpin, 91 U. S. 114, at page 118 (23 L. Ed. 235), a case arising in Massachusetts. Mr. Justice Strong, in delivering the opinion of the court, said:

"It was a frame building, erected upon leased ground; and Bacheller had, therefore, only a chattel interest in it. The conveyance was by a bill of sale, absolute in its terms; but it was understood by the parties to be a security for the debt due. It was in substantial legal effect, though not in form, a mortgage. Having been executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True, it was not recorded; and it may be doubted whether it was admissible to record. True, no possession was taken under it by the vendee; but for neither of these reasons was it the less operative between the parties. It might not have been a protection against attaching creditors, if there had been any; but there were none. It was in the power of Turpin to put it on record any day, if the recording acts apply to such an instrument, and equally within his power to take possession of the property at any time before other rights against it had accrued. These powers were conferred by the instrument itself, immediately on its execution."

In Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, a case arising in New York, it was held that a failure to record a chattel mortgage, not accompanied by change of possession, although void as to the creditors, etc., of the mortgagors, did not impair the validity of the mortgage between the mortgagors and mortgagee.

These two cases arose under a prior bankruptcy law; but the law is the same under the bankruptcy law of 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418). See Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789. See, also, the late case of Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610.

[2] Third. No rights of third persons intervened to affect or destroy Robinson's right to the possession of the assets. In Hineman v. Matthews, supra, there was a conditional sale of lumber, where for some two months the lumber remained in the possession of the conditional vendee. The vendee having become insolvent and having failed to pay, the vendor took and kept possession of the lumber. It was held that, inasmuch as the vendor had resumed exclusive possession of the lumber before any of the vendee's creditors acquired any right thereto by levy, sale, or otherwise, the lumber was beyond the reach of the vendee's creditors.

In Durr v. Replogle, supra, goods were delivered under an agreement calling for payment by installments. After default in payment the vendor resumed possession. On the same day, but at a later hour, an execution issued against the vendee. In a sheriff's interpleader, it was held that the vendor was entitled to possession as against the execution creditor.

Christ v. Zehner, 212 Pa. 188, 61 Atl. 822, is a case directly in point. On July 5, 1901, Kintz gave a judgment bond to Zehner, and to secure the same a bill of sale for the entire contents of the store. On January 25, 1902, Kintz delivered to Zehner possession of the store. Within four months, on May 17, 1902, a petition in involuntary bankruptcy was filed against Kintz. The trustee brought suit against Zehner to recover the value of the stock of goods which had been turned over to him. A compulsory nonsuit was entered, which was sustained by the Supreme Court. The Supreme Court of Pennsylvania in that case referred to the cases of Sawyer v. Turpin, supra, and Stewart v. Platt, supra, and affirmed the law in Pennsylvania to be that such contracts are good between the parties and until the rights of creditors have intervened.

It is not pretended in the case at bar that the rights of any creditor had attached prior to the time that Robinson took possession under his contract with the bankrupt. It was not until perhaps a week later that the rights of creditors were sought to be enforced against the property through the medium of the receiver appointed by the state court; but, as we have seen, under the authorities in Pennsylvania, no rights of creditors could interfere with Mr. Robinson's possession of the assets of the bankrupt.

Nor is there anything in the amendment of June 25, 1910, to the bankruptcy law, which would affect Mr. Robinson's possession. That amendment gives to the trustee in bankruptcy all the rights of a levying creditor; but no creditor had levied upon the property prior to Mr. Robinson's assumption of possession, and therefore the receiver in bankruptcy did not succeed to any right of any known creditor. Nor does the court see, in the absence of any prior proceeding by a

known creditor, how the rights of a receiver or trustee in bankruptcy as a levying creditor can exist prior to the time of his appointment. That amendment (Act June 25, 1910, c. 412, 36 Stat..840 [U. S. Comp. St. Su; ·. 1911, p. 1500]), by section 8, provides that such trustees—

"as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied."

It must be remembered that Robinson is not by his claim recognizing that the property was in the bankrupt's possession at the time the involuntary petition was filed, but is presenting his claim to the funds arising from the sale of his own property, which by. his agreement and with the approval of the court was turned over first to the receiver of the state court and then to the same man as receiver of the court of bankruptcy.

[3] Fourth. The rights of Robinson having been fixed more than four months prior to the filing of the petition in bankruptcy by a contract good between the parties, his taking possession of the property within the four months did not constitute a preference within the meaning of the bankruptcy law. Referring again to the cases hereinabove cited, holding that an agreement like that between Robinson and the bankrupt is good between the parties, we find that they practically all (notably Sawyer v. Turpin and Christ v. Zehner) affirm· the doctrine that the title to the property passed at the time of the execution and delivery of the agreements, although possession was deferred. Possession, as between the parties, could not add any strength to title, although as to creditors it might be a ground of seizure. The bankrupt could not have refused to give Mr. Robinson the control over the property which it had assigned to him. No legal proceedings were required by Robinson to give him possession, and there was clearly not a preference in permitting Robinson to come into his own when he had reason to believe that the corporation, to whom he had in good faith advanced his money, was in a precarious condition.

In support of the decision of the referee, counsel opposed to Mr. Robinson's contention have brought to the attention of the court the case of Bank of North America v. Penn Motor Car Co., 235 Pa. 194, 83 Atl. 622. In that case a bank had loaned money to the owner of automobiles under an agreement to hold the title to the automobiles in the nature of a pledge as collateral security for the money loaned. It permitted the automobiles to remain for a time in the possession of the borrower; but a few days before bankruptcy proceedings were instituted against the borrower it took possession of the machines by a writ of replevin. The court held it was not entitled to retain possession of the machines as against the trustee in bankruptcy of the borrower, and that under the act of Congress of June 25, 1910, the trustee had the right to take possession of the machines. This court does not believe that that case is specially applicable to the

present. The pledgee was compelled to resort to an action at law to recover possession of the automobiles, and in that very action at law the trustee in bankruptcy intervened. In other words, his rights under the act of Congress of June 25, 1910, were asserted before the completion of the proceedings by which possession was sought by the pledgee of the pledge. If, as stated in the opinion of the Supreme Court, it was the intention of that act to give the trustee "power to assert every right which such creditors could have asserted during the period of four months immediately preceding the filing of the petition in bankruptcy," no person dealing in good faith with a bankrupt could be sure until after four months had passed that the property which he had acquired might not be the subject of some inchoate lien, to spring into existence and interfere with his possession, if bankruptcy proceedings should be begun within the statutory period.

The construction insisted upon to be given to the case last cited is so opposed to the uniform policy of the law in Pennsylvania, as expressed in all the prior cases, that this court is of the opinion that it should be distinguished, because legal proceedings were necessary to acquire possession and because the trustee of the bankrupt, before the completion of such proceedings, intervened. If such case is not so distinguished, then the trustee of the bankrupt is given higher rights than any creditor, which was plainly not the intention of the act as ascertained from its language.

In this consideration of the certified question, we have had in view as a principal fact the good faith with which Mr. Robinson entered into his contract. That, however, is not alone the ground of our decision. The decision must rest upon the proposition that the bankruptcy law does not intend that the trustee shall be vested with any greater right to subject the property of third persons to the payment of the bankrupt's debts than any creditor had at or before the time that such trustee was appointed.

The decision of the referee must be reversed, and the certified question answered in the affirmative.