## BLACK v. FINANCING CORPORATION OF BUFFALO.

### In re WARREN OIL CO. OF PENNSYLVANIA.

(Circuit Court of Appeals, Third Circuit.    March 16, 1922.)

Nos. 2762, 2839.

Bankruptcy ⬅140(1)—Trustee held to have no title to cars sold conditionally to bankrupt.

Claimant sold tank cars conditionally to bankrupt under a contract retaining title until payment of the purchase price, and by which bankrupt agreed to and did, lease the cars to third parties, and assigned the lease to claimant, which collected the rentals and applied the same on the purchase price. At the time of bankruptcy the cars were, and had been for 16 months, in possession of the lessees, without the jurisdiction of the court, and each bore plates giving the name of claimant as owner, and a portion of the purchase money being at that time in default, claimant under the terms of the contract took possession of the cars and advertised the same for sale. *Held* that, under the law of Pennsylvania, an executive creditor of bankrupt could not have levied on the cars, and that the trustee, whose rights, under Bankruptcy Act, § 47a (2), as amended by Act June 25, 1910, § 8 (Comp. St. § 9631a[2]), were measured by those of such creditor had no title which he could assert against claimant.

Petition for Revision and Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of the Warren Oil Company of Pennsylvania, bankrupt. On petition to revise, and appeal by Samuel J. Black, trustee, to review an order of the District Court vacating a restraining order issued against the Financing Corporation of Buffalo. Affirmed.

Joseph A. Beck and Howard Zacharias, both of Pittsburgh, Pa., for appellant.

John J. Heard and Edwin W. Smith, both of Pittsburgh, Pa., Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y., and Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. On November 1, 1919, the Financing Corporation of Buffalo, hereinafter called Buffalo, contracted in writing with the Warren Oil Company of Pennsylvania, hereinafter called Warren, to sell conditionally to Warren 100 rebuilt tank cars for $200,000, payable in 36 promissory notes. The contract provided that the title to the cars, which were then being built for Warren by a third company, and being paid for by money furnished by Buffalo to Warren "(notwithstanding the possession and use by the party of the second part or otherwise), shall be and remain in the party of the first part, until the terms, each and all, of this agreement shall have been complied with by the party of the second part, and until the full payment of each and all of said deferred installments of purchase money together with interest thereon." It was also provided that in case of default, Buffalo could declare all notes unpaid, take possession

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the cars, receive rentals and sell them on 10 days' notice. As a part of the transaction, and on the same day, a supplemental contract was made whereby Warren agreed to try to lease the cars to third parties, and if this was done, assign the lease of such third parties to Buffalo and direct them to pay the rentals to Buffalo.

Thereafter, on November 8, 1919, Warren did lease the cars to the National Oil Company, a Delaware Corporation, with its principal office at Kansas City, and the Arkansas City Pipe Line Company, a corporation of Arkansas, with its principal office at Arkansas City, Ark., for a term ending December 1, 1922, at a monthly rental of $55 per car, and on said day, assigned the lease to Buffalo. The cars have since been in the possession of the lessees, and on both sides of each of them has been an ownership plate, "Financing Corporation, Buffalo, N. Y., owner." There was a balance of $124,265.90 of car purchase money still due, from Warren to Buffalo, when on May 6, 1921, Buffalo took possession of the cars, which were then in possession of the lessees at various places over the United States, none of them being in Warren county, Pa., the home county of the Warren Company, and gave notice that it would sell them at public sale on July 2, 1921, unless the balance due was paid. On April 27, 1921, an involuntary petition in bankruptcy was filed against Warren, and on May 14 following, it was adjudged bankrupt. Thereafter, on petition of its receiver, the court below, on June 30, 1921, issued an order restraining Buffalo from selling the cars. After answer, testimony, and hearing, the court below, on July 29, vacated its restraining order of June 30; thereupon the case was brought to this court for review.

Though confining ourselves to a single, and, as we think, the primary and decisive, question in the case, we have not overlooked the several other points raised and ably discussed. In our judgment, the case centers to the question whether the trustee of Warren has shown title to the cars which are now in possession of Buffalo, and which, at the time of the bankruptcy, were outside the jurisdiction of the court, and in possession of the lessees under the lease which had been assigned to Buffalo by Warren.

Now, the title of the trustee to a bankrupt estate is fixed by the Bankruptcy Law amendment of June 25, 1910 (Comp. St. § 9631), which enacts, the trustee "as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied," and in Bailey v. Baker, 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, it was held "that the trustee takes the status of such a creditor as of the time when the petition in bankruptcy is filed."

Such being the statute test of trustee title, our next inquiry is what, under the law of Pennsylvania, would have been the rights of an execution creditor of the Warren Oil Company levying on these cars just prior to April 17, 1921, the day the petition in bankruptcy was filed?

No question of fraud, preference, or bad faith is involved. The question is solely one of title. The sale in this case was a conditional one on a contract, which stipulated that title should remain in the vendor, notwithstanding delivery to the vendee. As between the par-

ties, such a condition was valid, but not as against a levying creditor of the buyer. And this is so for the same reason that retention of property by a seller subjects it in Pennsylvania to a levying creditor of the seller, a question we had to consider in Zehner v. Southern Co. (C. C. A.) 272 Fed. 956, and Re Komara, 251 Fed. 47, 163 C. C. A. 297, where we said:

"Undoubtedly the Pennsylvania decisions, from Clow v. Wood, 5 Serg. & R. 275, 9 Am. Dec. 346, with the intervening cases, to Barlow v. Fox, 203 Pa. St. 114, 52 Atl. 57, hold that retention of possession when actual delivery is practical is a fraud in law, and will not avail against creditors."

In the same case, we cited Christ v. Zehner, 212 Pa. 188, 61 Atl. 822, which is to the effect that if the buyer takes possession before the creditor of the seller levies, the latter's potential right of levy is gone. These firmly fixed Pennsylvania principles as to the effect of possession or nonpossession on levying execution creditors of a seller are also applicable to the case of the rights of an execution levying creditor of a buyer, for in both cases, the principle of law is "that retention of possession when actual delivery is practical is a fraud in law, and will not avail against creditors." But the facts of this case show here that Warren did not retain possession of the cars and therefore created no fraud in law, and that when the bankruptcy occurred, they were neither in possession of the bankrupt, and, in the words of the bankruptcy amendment, were "property not in custody of the Bankruptcy Court." On the contrary, the very contract by which Buffalo sold the cars to Warren provided that the buyer should not retain possession, but that, if the buyer could lease them, they should pass by lease to third parties and that the lease should be assigned to Buffalo and the rental accrue to it. This was done. For some 16 months before bankruptcy they were in the possession of the lessees, who, by virtue of the assignment of the lease to Buffalo, were by principles of law under tenure to Buffalo and its ownership was openly evidenced by placing its name on the car. The possession by Buffalo's tenant or lessee of these cars, the public assertion of ownership by Buffalo, and the many months during which this status continued, all constituted such a possession by Buffalo that when the bankruptcy came, an attempt just prior thereto by an execution creditor of Warren to take these cars in execution, would not have availed because the possession of the cars was, and for 16 months had been, in and under Buffalo. When, therefore, Buffalo on May 6, 1921, by virtue of the power conferred on it in case of default by the contract of November 1, 1919, took the case from the lessee's possession into its own, we are of opinion the trustee had no legal title to forbid such action because an execution creditor of Warren would have had no right to levy on the cars at that time, had there been no bankruptcy, and the title of the trustee was, by the statute, tested by the right of such execution creditor.

This view, as we have said, renders it needless to discuss the other phases of the case, including that of the trustees' right to any surplus, in case there be any arising from a sale of the cars.

The judgment below is affirmed.