### FREDERICK v. MOTORS MORTGAGE CORPORATION.

(District Court, W. D. Pennsylvania. April, 1924.)

No. 2936.

**Bankruptcy ⟨⟩165(2)—Under facts no voidable preference.**

Where more than eight months before bankruptcy of dealer in automobiles, it, to pay for cars, executed bill of sale thereof to M., who paid for the cars, gave a lease thereof to dealer, and took a note for their price, *held*, there was no voidable preference, though M., for breach of condition of the lease, took possession of the cars within four months of bankruptcy.

At Law. Action by Elliott Frederick, trustee in bankruptcy of the Wilmer Sales Company, against the Motors Mortgage Corporation. Heard on plaintiff's motion for new trial. Motion overruled.

See, also, 1 F. (2d) 437.

THOMSON, District Judge. This is an action by the trustee in bankruptcy of the Wilmer Sales Company against the Motors Mortgage Corporation, to recover the value of three automobiles and three trucks conveyed to the defendant, on the ground that the same constituted a preference voidable under the act of Congress (Comp. St. §§ 9585–9656). To avoid such alleged preference, and recover the value of the property, this action is brought. The court, on the conclusion of the evidence, gave binding instructions for the defendant; the cause being now before the court on a motion for a new trial. The following facts appear:

The Wilmer Sales Company was a dealer in Kissel automobiles and trucks in the city of Pittsburgh. In this case, and perhaps in many previous cases, the cars were shipped from the Kissel factory, consigned to the Kissel Motor Company, "notify Wilmer Sales Company," with an invoice and bill of lading attached. When the Wilmer Sales Company was notified that the cars were at the depot, that company would notify the Motors Mortgage Corporation. Thereupon, the Wilmer Sales Company executed bills of sale to the Motors Mortgage Corporation for the cars and trucks in question; these bills of sale being Exhibits A to F, inclusive. This was followed immediately by the execution to the Wilmer Sales Company of what are known as bailment leases for cars and trucks, being Exhibits G to L, inclusive; the lessor at the same time taking a note from the Wilmer Sales Company for the total purchase price of the property. Upon the execution of the papers, the purchase price was thus paid by the Motors Mortgage Corporation. On the face of the papers, the Motors Mortgage Corporation became the purchaser absolute of the cars, furnished the money which paid for them, and leased the property so purchased to the Wilmer Sales Company, into whose possession the cars were thereupon delivered.

Under the uncontradicted testimony in the case, the Wilmer Sales Company did not get actual physical possession of the cars until after the bills of sale and leases were executed and delivered. There is not the slightest evidence anywhere in the case that these transactions were not carried on in perfect good faith as between the two companies. It is undoubtedly true that the ultimate intention was that the Wilmer Sales Company should get title for the purposes of sale, and that the method employed was for the purpose of vesting title temporarily in the Mortgage Corporation; and that they

should secure themselves legally for the money advanced by taking title and executing bailment leases, and that, when the consideration specified in the papers was paid by the bailee in accordance with their terms, the title should be transferred to the bailee, or its assigns. There was nothing either morally or legally wrong in such a transaction. On the other hand, its validity has been recognized by multitudinous decisions of the courts of Pennsylvania.

This transaction in relation to the cars occurred on the 7th day of May, 1921. The bills of sale were absolute on their face. The leases were for the term of three months; the lessee agreeing to pay as rent the respective amounts therein specified on or before the last day of the term, the amount of the rent to be evidenced by a promissory note, and the note being evidence of the amount becoming due under the lease. At the expiration of the term, the lessee agreed to surrender to the lessor, or its assigns, the property leased, and after surrender the lessee might at its option purchase the same upon a further payment of $1, provided all the provisions of the lease were complied with. The lessee agreed not to sell, assign, let, pledge, or incumber the property described in the lease, provided that the machine leased and title thereto shall remain vested in and be the property of the lessor, the lessee agreeing not to operate the same, except only in its garage; that a removal therefrom would constitute a breach of the agreement; that in the event of default or breach in any condition or covenant in the lease, or if the lessor shall deem the financial responsibility of the lessee unsatisfactory, or upon the issuing of any attachment execution, distress for rental, or like process, against the lessee, or if the latter executed any bill of sale or assignment for the benefit of creditors, the lessor was authorized to enter on the premises of the lessee, with or without force or process of law, and forthwith take possession of the property—with other covenants usually contained in such bailment leases. On the 24th of January, 1922, about eight months after the leases had been executed, and when the conditions of the leases had been broken by nonpayment, the Motors Mortgage Corporation took and retained possession of the machines in question. Afterwards, on the 10th day of February, 1922, a petition in bankruptcy was filed against the Wilmer Sales Company, and the property so taken possession of by the defendant, or rather its value, is now claimed by the trustee, on the ground that

a voidable preference was created in favor of the defendant.

In this situation, in the absence of fraud, what are the rights of the respective parties? There was nothing to submit to the jury as to the validity or invalidity of the original transaction. Unquestionably it was good between the parties, and as a matter of law it was good against creditors. The plaintiff's case is sought to be supported as if the transaction which constituted the alleged preference had occurred within four months prior to the filing of the petition in bankruptcy. As a matter of fact, it occurred eight months before the bankruptcy. The courts of Pennsylvania, whose laws must determine the validity or invalidity of such a pledge, have gone very far to protect a pledge made in good faith for a present consideration. In such case, the actual delivery of possession of the thing pledged is not an essential element in its validity.

The leading case, perhaps, in Pennsylvania, is that of Christ v. Zehner, 16 Am. Bankr. Rep. 788, 212 Pa. 188, 61 Atl. 822. There a bill of sale of a stock of goods was given for money loaned and to be advanced, possession of the goods not being taken. More than four months afterwards, and within four months from the institution of the bankruptcy proceedings against the vendor, there was indorsed on the bill of sale a statement to the effect that the loan was still due and that possession was thereby given. It was held that the title to the goods was deemed to have passed by the original bill of sale, without any unlawful preference, notwithstanding possession had remained in the pledgor. The Supreme Court, on the important question of delivery of possession, said:

"The only question remaining, then, is as to when the title to the property of the bankrupt actually passed. Was it when the bill of sale was executed and delivered, or when possession of the goods was actually given? The authorities cited by the trial judge seem to fully sustain his conclusion that the property was transferred when the bill of sale was executed and delivered. In addition to the cases cited, the decisions of the Supreme Court of the United States seem to meet the identical question involved. In the case of Sawyer v. Turpin, 91 U. S. 114, it was held that an exchange of a chattel mortgage within four months of the filing of the petition in bankruptcy, for a bill of sale given by the bankrupt more than four months prior to that date for the same articles, was valid against the assignees in bankruptcy, al-

though the bill of sale was not recorded and possession was not given thereunder."

The opinion then cites the wording of Justice Strong in Sawyer v. Turpin, 94 U. S. 114, on page 118: "The conveyance was by a bill of sale absolute in its terms, having no condition or defeasance expressed, but it was understood by the parties to be a security for the debt due. It was, in substantially legal effect, though not in form, a mortgage. Having been executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True, it was not recorded, and it may be doubted whether it was admissible to record. True, no possession was taken under it by the vendee; but for neither of these reasons was it the less operative between the parties. It might not have been a protection against the attaching creditors, if there had been any; but there were none. It was in the power of Turpin to put it on record any day, if the recording acts apply to such an instrument, and equally within his power to take possession of the property at any time before other rights against it had accrued. These powers were conferred by the instrument itself, immediately on its execution." To the same effect is Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Adams v. Collier, 123 U. S. 382, 7 Sup. Ct. 1208, 30 L. Ed. 1207.

Much confusion has arisen between the cases where a purchaser fails to take possession of the property, and it becomes subject in the hands of the vendor to execution or attachment creditors, or to the rights of an innocent third party without notice. If the case of Christ v. Zehner, supra, is the law of Pennsylvania, and I have no doubt of it, it is controlling in this case. The transaction which fixed the status of the parties was long prior to the four months' period. The transaction itself was not tainted with any suspicion of fraud. There were no attachment or other execution creditors, and the rights of the parties were fixed as of the date when the bills of sale and leases were executed and delivered. Possession being taken because of default in the conditions of the leases, the status and rights of the parties were not affected by the subsequent proceedings in bankruptcy. There was no matter controlling, or material to the issue, for submission to the jury. Had a judgment been rendered against the defendant, I would have been compelled to set it aside. In the case of Root v. Repub-

lic Acceptance Corporation, 2 Am. Bankr. Rep. (N. S.) 784, 279 Pa. 55, 123 Atl. 650, the opinion of the Supreme Court, by Justice Schaffer, does not conflict with the position here taken. There the bill of sale and lease and subsequent levy were all within the period of four months prior to the institution of bankruptcy proceedings, which is a vital and controlling distinction. The opinion of the Supreme Court must be construed in the light of the facts of the particular case in which the opinion was rendered, and where general expressions are used they must not be held to overthrow those fundamental principles which have been so long and so well established by that tribunal.

The motion for a new trial is overruled.