### 514. JAMES *v.* AVERY & McMILLAN.

One who in the sale of personal property has reserved title thereto may, by trover, recover the same even against the purchaser at a judicial sale. But where personal property to which title has been reserved is sold under an order of a court, and the vendor who has reserved the

title elects to claim a lien upon the fund, he is estopped thereafter from asserting his title as against the property, and is confined to the proceeds of its sale.

Certiorari, from Emanuel superior court—Judge Rawlings. April 25, 1907.

Argued October 21, 1907.—Decided January 15, 1908.

C. A. Howell purchased certain machinery from Avery & Mc- Millan and gave four notes for the purchase-money. In these notes Avery & McMillan reserved the title to the property in ques- tion until the purchase-price should be fully paid; and the notes with the reservation of title were recorded in Johnson county in 1900, and in Emanuel county on June 9, 1901. On June 1, C. A. Howell was adjudged a bankrupt; and on June 7, a sale of the property of the bankrupt, including the machinery he purchased from Avery & McMillan (which had previously been ordered by the United·States district court), was confirmed by the referee in bankruptcy. On July 23, 1901, Avery & McMillan intervened in the proceeding in bankruptcy, proved their notes, and claimed a first lien on the proceeds of the sale of the machinery, which had been sold by D. R. Clayton, receiver. T. J. James bought the property in question at the receiver's sale for $600. The· unpaid purchase-money notes with reservation of title, payable to· Avery & McMillan, amounted to $221, besides interest. Some time after the claim of Avery & McMillan was filed with the referee in bankruptcy, Mr. George W. Owens, as attorney for Avery & McMillan, withdrew their claim, by taking the papers, with the consent of the referee, from the files, but no order of withdrawal was entered. Avery & McMillan thereafter brought an action in trover in the city court of Swainsboro against James, the purchaser of the machinery, to recover one No. 1 Frick Eclipse· sawmill, thirty-five feet of carriage, and certain other machinery described in the petition. At the conclusion of the evidence the· judge of the city court directed a verdict in favor of the plaintiffs· for $310.66,—the plaintiffs asking a money verdict. Thereupon the defendant filed a petition for certiorari. The certiorari was· overruled, and exception is taken to that judgment.

In the petition for certiorari it is insisted: First, that the sale made in pursuance of the order of the United States district court was legal and valid and passed the title to the plaintiff in

error, free from all liens and incumbrances, and free from any claim on the part of the defendants in error. Second, that Avery & McMillan, having relinquished all right and title to the property by proving their claim in the bankruptcy court and claiming a first lien on the fund arising from the sale (as the order of sale empowered them to do), with full knowledge of all the facts, ratified the sale. Third, because the claim of Avery & McMillan is still pending in the United States district court, they having entered said court of their own motion, and their claim never having been formally or legally withdrawn. Fourth, that Avery & McMillan, under the order of sale, had a superior lien on the fund in the bankruptcy court, arising from said sale, to any and all other claimants; and petitioner in certiorari having no right to said fund, Avery & McMillan would be compelled to exhaust the fund arising from said sale and credit the same on their claim before proceeding against him. Fifth, that there are sufficient funds in the hands of the receiver to pay off and fully discharge the claim of Avery & McMillan. As alleged in the petition for certiorari, these were the objections made by James, as defendant in the action in trover in the city court of Swainsboro, to the direction of a verdict by the court, James contending especially that the question of ratification was one of fact and should be submitted to the jury. Exception is also taken to the ruling of the court on certain interrogatories.

*Saffold & Larsen, Hines & Jordan,* for plaintiff in error.

*Williams & Bradley, Frank Reagan,* contra.

RUSSELL, J. (After stating the foregoing facts.)

After a careful consideration of the record, we are of the opinion that the controlling questions in this case are: (1) whether the defendants in error had the option to pursue either of two remedies in the collection of their debt; (2) whether they exercised their option; and (3) if, having exercised their option, they are estopped from now selecting the other of the two remedies. It can not be questioned that the reservation of title in the note given by Howell to Avery & McMillan would have amply protected all of their rights had they declined to prove their claim in bankruptcy, and that by an action in trover they could have recovered the property they had sold to Howell, even after the sale by the receiver of the United States court. The bankruptcy

of the vendee would not affect the right of a plaintiff in trover to the property, if the title was reserved and the evidence of the reservation of title (such as the purchase-money note) was properly recorded. Stewart v. Platt, 101 U. S. 731 (15 L. ed. 816); In re Mulhauser Co., 10 Am. Bkr. R. 240 (121 Fed. 669, 57 C. C. A. 423); Taylor v. McLaughlin, 120 Ga. 703 (48 S. E. 203). And the purchaser would have had all the notice required by law of a vendor's title. Anderson v. Leverett, 116 Ga. 732 (2), 734, 735 (42 S. E. 1026). The defendants in error, however, with knowledge of the lis pendens, intervened in the United States district court and elected to claim a first lien on the fund, instead of standing on their title to the property which had been sold. The record is conclusive that in 'the filing of this intervention Mr. Owens represented the defendants in error; and they are bound by his act. If there were doubt upon this subject, it appears clear to us that his act was ratified by the defendants in error. In the interrogatories of the defendants in error they state that they did not know that Mr. Owens had intervened in their behalf in the United States district court, but they do not deny that Mr. Owens was their attorney. If he was their attorney, as is unquestioned, he had the right to proceed to collect their money by either route he preferred,—to make their election for them. The answers to the interrogatories propounded to the defendants in error are that the defendants in error were ignorant of what Mr. Owens had done; but they did not disavow his employment.

Then, did the defendants in error ratify the act of Mr. Owens? In our view of the case it is immaterial whether they ratified it or not, unless it appeared that Mr. Owens was not authorized to act. Granting that he was not authorized, the defendants in error would be presumed to know the condition of their claim and the proceedings being taken to enforce its collection. By not expressly disavowing the steps taken by Mr. Owens towards its collection, and not denying that Mr. Owens was their attorney, the defendants in error were bound by his act; and there was no issue of fact as to Avery & McMillan's intervening in the United States court. Consequently, as to this point, the judge of the city court erred in directing a verdict for the plaintiffs (though he might have been authorized to direct a verdict for the defendant), and

the judge of the superior court erred in not setting aside the verdict directed.

Avery & McMillan were plaintiffs in the city court; and when the defendant, James, introduced the record showing that the then plaintiffs had intervened in the United States district court, the presumption certainly arose that Avery & McMillan had elected to proceed against the fund arising from the sale by the receiver, instead of asserting their title to the property. As there was no evidence that Mr. Owens was acting without any authority from Avery & McMillan, and the evidence showed him to be an attorney at law, it would be presumed that he was acting under employment and by authority. In this state of the case the burden was shifted from the defendant to the plaintiffs, and it became incumbent upon them to show that the act of Mr. Owens was not their act, or that for some other reason their action in intervening in the United States court did not amount to an estoppel. Either would have rebutted the inference which the jury might have drawn from the facts so far in evidence. The defendants in error did not attempt to disavow the act of Mr. Owens or his authority. They relied upon the proposition that the defendants took nothing by their intervention (which confessedly would amount to an estoppel), and relied upon the fact that their intervention was withdrawn before the commencement of the action in trover which is the subject of adjudication in the State courts. The question finally resolves itself, then, into the inquiry whether the physical withdrawal of the papers from the custody of the referee, with the personal assent of that officer but without any written official action upon his part, can effect the dismissal of the intervention of Avery & McMillan, or, even if such be the effect, whether such dismissal can defeat or destroy the estoppel resultant from the previous action of the defendants in error in setting up a claim to the fund.

We think that the claim could not have been withdrawn by a mere manual taking. The intervention being a matter of record, in our opinion an order allowing the withdrawal should have been duly entered by the referee, to be effectual in accomplishing a withdrawal of the intervention. But this point is completely unimportant, for the reason that the prior action of the plaintiffs in the trover suit, in proving their claim and claiming a first lien

on the fund arising from the sale by the receiver, in our judgment, would clearly estop them from thereafter asserting their title, even though the intervention had been more formally withdrawn by an appropriate order, unless the plaintiffs had shown that Mr. Owens was not employed as an attorney to act in their behalf, and that, because he was not their attorney, they had disavowed his act in filing the intervention. If he was not authorized to file the intervention, it devolved upon the plaintiffs in the action in trover to show that fact. In proceedings in court, where an attorney at law purports to represent a party, proof of the fact that he did represent him is sufficient evidence of employment and of authority on the part of such attorney to act according to his own judgment in the election of remedies, in the absence of evidence to the contrary.          *Judgment reversed.*