Chicago Title & Trust Co., Trustee of Alexander Rodgers, Bankrupt, Appellant, v. The First National Bank of Chicago, Appellee.

## Gen. No. 17,380.

1. BANKRUPTCY—*jurisdiction.* Jurisdiction in bankruptcy over property in a warehouse, the receipts for which were pledged as security for a loan, depends on whether possession thereof was with the bankrupt or with persons claiming adversely at the time the petition was filed.

2. BANKRUPTCY—*determination as to jurisdiction of property is res adjudicata.* On petition in bankruptcy the court has jurisdiction to determine whether it has jurisdiction of certain property, and its decision and the facts necessary to be passed upon to determine the question are *res adjudicata.*

3. BANKRUPTCY—*when determination of jurisdiction of property is res adjudicata.* The determination in bankruptcy proceedings that property in a warehouse, the receipts for which were given by the bankrupt to secure a loan, was not in the possession of the bankrupt when the petition was filed, is *res adjudicata* on *assumpsit* by the trustee and receiver for the proceeds of the sale of such property, where the parties are the same or in privity or represented by them.

4. BANKRUPTCY—*what provision of decree does not change effect of determination as to jurisdiction.* The legal effect of a decree in bankruptcy proceedings that certain property was not in possession of the bankrupt when the petition was filed is not changed by words "Without prejudice to the rights of the trustee, if

340    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

this court shall authorize, to litigate in any proper court the question of the right of the said trustee to recover said fund as a part of the bankrupt estate."

5. PLEDGE—*on whom pledge to creditor binding.* If personal property is delivered as a pledge to a creditor or to a third person for him, the pledge is binding on all persons claiming under or against the pledgor who have no special liens on the property.

6. PLEDGE—*when substitution of property does not affect pledgee's rights.* Where warehouse receipts for certain seed are given as security for loans, substitutions of the lots of seeds, when made without their knowledge or consent, do not affect the pledgees.

7. BANKRUPTCY—*question as to bona fides of a pledge left open by determination that pledged property was not in bankrupt's possession.* Though it was decided in bankruptcy proceedings that possession of certain property was not in the bankrupt when the petition was filed, on *assumpsit* by the trustee and receiver for the proceeds of a sale thereof by a creditor who held warehouse receipts for the property, questions concerning such creditor's right to the proceeds may be litigated and the proceeds may be recovered by the trustee if the creditor was not bona fide or if an unlawful preference was given him.

8. ASSUMPSIT—*nature of.* Assumpsit by the trustee and receiver of a bankrupt against creditors for the proceeds of the sale of certain property is in the nature of an equitable action.

9. BANKRUPTCY—*fraud.* No actual fraud can be predicated on transactions whereby bona fide creditors of a bankrupt become pledgees of warehouse receipts to secure liens for their claims without knowledge of his insolvency and long before bankruptcy proceedings.

10. LIENS—*when secret.* Liens of creditors with whom warehouse receipts for property of the debtor are pledged as security. are secret liens which do not comply with the chattel mortgage statute.

11. BANKRUPTCY—*section* 70 (*a*) *construed.* The bankruptcy Act, § 70 (a), vests the trustee with only such title to property as the bankrupt had, burdened with all equities, charges and liens.

12. BANKRUPTCY—*what proceeds cannot be recovered by trustee.* The trustee stands in the shoes of the bankrupt and cannot recover in *assumpsit* the proceeds of a sale of property which was in the possession of a warehouseman when the petition was filed, and the receipts for which were held by bona fide creditors who became pledgees thereof without knowledge of insolvency and long before bankruptcy proceedings and without intention to defraud.

CLARK, P. J., dissenting.

Appeals from the Circuit Court of Cook county; the HON. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Ap-

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

pellate Court at the March term, 1911.  Affirmed.  Opinion filed November 12, 1912.

NEWTON WYETH, for appellant.

ORVILLE PECKHAM and CARNAHAN, ELSDON & SLUSSER, for appellees.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This case (No. 17380) and Nos. 17381 and 17382 were consolidated for trial before the court without a jury, and have been consolidated for hearing in this court. The actions are *assumpsit*. The declaration in the bank case contains seven special counts and the common counts. The first four special counts set out that Alexander Rodgers, a seed merchant, became bankrupt and the plaintiff was appointed trustee of his estate by the United States District Court, sitting in bankruptcy; that as such trustee, the plaintiff received certain seed from the bankrupt who was in lawful and exclusive possession thereof when he filed his petition in bankruptcy; that the defendant afterwards, without the consent of plaintiff, took possession of said seed, sold it and kept the proceeds; that the plaintiff has demanded said proceeds of the defendant, etc.

In the remaining three special counts, the plaintiff avers that the seed, which was the property of the bankrupt, passed to the trustee, and that the proceeds had come into the hands of the bank.

The defendant bank pleaded, first,—the general issue, and, secondly,—*res judicata* or estoppel by verdict, on the question of possession as to whether at the time of the bankruptcy the bankrupt had possession of the seed. This plea set up an adjudication of that question of fact between the parties in the bankruptcy court. As this second plea is important, and was indeed the center of the contention in the trial court, and the case was virtually determined by it, it is here given in full.

342    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

"That as to each and all of the several supposed causes of action, except the fifth, sixth, and seventh counts, defendant says plaintiff ought not to have its action, etc., because the defendant says that the plaintiff on, to-wit, May 13, 1901, being then receiver of said bankrupt appointed by said District Court, etc., presented its petition as such receiver in said bankruptcy court, in and by which petition it represented and claimed that as receiver it had taken and held possession of certain property of the bankrupt, including that for the proceeds whereof this suit is brought, and prayed for an order allowing said receiver to sell said property, and made defendant a party defendant to said petition; thereupon the defendant appeared specially and denied the jurisdiction of said bankruptcy court to interfere with said property or to order the sale thereof, for the reason that said property was not and had not been in the possession of said bankrupt at the time the petition in bankruptcy was filed, and had not afterwards come into said receiver's possession, but since prior to the filing of said petition in bankruptcy had been in possession of the National Storage Company for the use and benefit of the holders of warehouse receipts for said property, which prior to the filing of said petition in bankruptcy had been issued by said storage company and which were then and there held and owned by defendant; that thereupon evidence was heard and said bankruptcy court found, adjudged and decreed that said property at the time when the petition in bankruptcy was filed was not in possession of said bankrupt, and had not since the issuing of the said warehouse receipts been in possession of said bankrupt, but that said property had since the issuance of said warehouse receipts always been in the full possession and control of said storage company for the use and benefit of defendant as the holder of said receipts; which said judgment and decree still remains in full force; this the defendant is ready to verify by the record of the proceedings, etc."

After the plaintiff's demurrer to this plea was overruled, he took leave to file four replications to the plea

as follows: First,—*nul tiel record;* second,—that the decree in the court of bankruptcy was without prejudice. to the right of the trustee in bankruptcy to litigate in a proper court.

The third replication alleges, in substance, the same matters averred by the second.

In the fourth replication the plaintiff seems to set up two different answers to the plea; first,—that inasmuch as the court in bankruptcy found against the plaintiff on the question of jurisdiction, the very lack of jurisdiction cut it off from entering a decree even to that effect, and hence the decree is void; and, second,—that the real issue tried. in the court of bankruptcy was whether the receiver had possession of the seed,—not at the time of bankruptcy, but at the time when it filed its petition for leave to sell the seed.

An issue was joined on the first of these replications (*nul tiel record*); demurrers to the other three replications were sustained; plaintiff elected to stand by the replications.

The declaration in the Rogers and Brother case, No. 17381, consists of three special counts and the consolidated common counts. Each of the three special counts alleges that Alexander Rodgers, a seed merchant, became bankrupt; that the plaintiff was appointed trustee of his estate by the United States District Court, sitting in bankruptcy, and the giving of a preference to the defendants by the bankrupt, and the plaintiff had reasonable cause to believe a preference was thereby intended.

The pleadings in the Rogers & Brother case and the National Storage Company, case No. 17382, are similar in form and substance to those in the bank case, and need not be stated.

The contents of the bills of exceptions in the three cases are identical, except as to the propositions of law held at the request of defendants, and as to findings and matters incident to taking the respective appeals.

344    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

It appears that on May 9, 1901, Alexander Rodgers filed his petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, and the Chicago Title & Trust Co. was forthwith appointed receiver of the property and estate of the bankrupt, and so continued as receiver until it was appointed trustee on July 5, 1901. Rodgers was adjudged a bankrupt on May 10, 1901. On May 13, 1901, the receiver filed its petition in the District Court, alleging that it had taken possession of the property and assets of the bankrupt at his premises, Nos. 220-230 Johnson street, Chicago, consisting of seed, and praying for direction of the court as to the sale of same.

On May 16, 1901, the First National Bank of Chicago entered its special appearance and denied the jurisdiction of the District Court to enter an order as prayed for, and as ground alleged that the bank was the holder of thirteen warehouse receipts for seed on the said premises, issued by the National Storage Company to the bankrupt, and by the bankrupt hypothecated with the bank as security for indebtedness of the bankrupt to the bank, and alleged that the seed described in the receipts was not and had not been in possession of the receiver, and was not at the time of the bankruptcy or at any time since the issuance of the receipts in the possession of the bankrupt, but had been in the exclusive possession and control of the storage company, and denied the jurisdiction of the court and prayed that the receiver's petition be dismissed so far as the seed represented by said receipts held by the bank was concerned.

On the same day, H. W. Rogers & Brother appeared specially for the purpose of objecting to the jurisdiction of the court, so far as the same related to the seed covered by five like warehouse receipts which had been delivered by the bankrupt to them as security for a loan of $5000, by them to the bankrupt, and made allegations as to possession of the seed similar to those

Chicago—First District—November, 1912.    345

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

made by the bank, and denied that same was then in the possession of the receiver, and prayed that the court would adjudge that it had no jurisdiction to proceed further in such summary manner.

On the same day, the National Storage Company entered a like special appearance, and objected to the jurisdiction of the court on similar grounds, alleging that it entered into the said premises under lease dated August 31, 1900, and had continued in such possession, and denied that the receiver at any time took possession of the premises or the part thereof included in its lease, and alleged that prior to the filing of the petition in bankruptcy, the storage company had possession of and stored in said premises the goods and chattels described in the answers of the bank and of Rogers & Brother, and some other lots of seed; alleged that it was a warehouseman of Illinois of Class C, and that it and other storage companies doing business in Chicago and elsewhere in like manner have been in the habit of issuing warehouse receipts for property so in their possession, and that any attempt on the part of the receiver to take and sell the property would work irreparable injury to the company.

Evidence was taken in the bankruptcy court on the issues thus presented, and a decree was entered October 29, 1902. Before the decree of the bankrupt court was entered, on a stipulation of the parties in open court, the District Court made an order on August 5, 1901, whereby the bank was allowed to make a sale of the seed in question and hold the proceeds derived therefrom subject to the further order of the court; and the seed was thus sold; reports of sale being filed by the bank September 13, 1901, showing that the proceeds of the five lots of seed claimed by H. W. Rogers & Brother produced the net amount of $7,230.43, and the proceeds of the seed claimed by the bank produced the net amount of $15,773.41. The reports were approved by the court on September 23, 1901. Out of the gross amount, by order of the court, $5,000, was paid

346 APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

over by the bank to the trustee pending proceedings.

The decree entered October 29, 1902, found that the receiver had not, at the time of the filing of its petition, to-wit, May 13, 1901, the right of possession of the property involved, and that the National Storage Company was at said date, and also at the time of filing the petition in bankruptcy, entitled to the possession and had possession of the said property. The court further found and decreed that the First National Bank was entitled to be paid out of the fund realized from the sale of the seed, $9,854.15, with interest, according to promissory notes held by it and secured by the thirteen warehouse receipts or warrants (describing them); and that H. W. Rogers & Brother were entitled to be paid $5,000 with interest, according to the promissory note held by them and secured by five storage receipts or warrants (describing them); and that the storage company was entitled to $14.99, for storage charges upon said property due at the time of the filing of the petition in bankruptcy,—and decreed that the bank retain the said $9,854.15 and interest, and pay said $5,000 with interest, over to H. W. Rogers & Brother, and the sum of $14.99 to the storage company, and the balance of the proceeds of the sale to the trustee, and ordered that certain costs be paid by the trustees, including $212.50 for printing of testimony expended by the storage company.

From this decree the trustee and James A. Patten, a large creditor, took an appeal to the Circuit Court of Appeals for the Seventh Circuit, which reversed the decree of the District Court and gave di- of Appeals, that I quote his language, as follows In re Rodgers, 60 C. C. A. 567, 125 Fed. 169.

The case was taken to the Supreme Court of the United States by *certiorari,* which resulted in a reversal of the Circuit Court of Appeals' decree and modification of the decree in the District Court. First Nat. Bank v. Chicago Title & Trust Co., 198 U. S. 280. Later, on a review of the subsequent action of the

Circuit Court of Appeals, the Supreme Court approved of the first decree of the District Court, and in its opinion said that it declared in its first opinion, perhaps unnecessarily, that the decree was to be without prejudice, etc. *Ex parte* First Nat. Bank, 207 U. S. 61.

Appellant contended by its petition for an order of sale of the property in question in the bankruptcy court, that Rodgers, the bankrupt, was in possession of the seed when he filed his petition in bankruptcy, and that appellant succeeded as receiver to such possession. The appellees contended in that court that the bankrupt was not in the possession of the seed when he filed his petition in bankruptcy, but on the contrary he had theretofore transferred the possession to appellee, National Storage Company, for the use and benefit of the holders of warehouse receipts for the property, which receipts had been issued by the Storage Company prior to the filing of the petition in bankruptcy and were held and owned by appellees, The First National Bank and Henry W. Rogers & Brother as security for an indebtedness of the bankrupt to the bank and to Rogers & Brother, respectively. The same contention as to the possession of the seed described in the receipts are made and the same issue is presented in these cases, and upon the same evidence which was presented and received in the bankruptcy court, the testimony in the cases of the individual witnesses being introduced from the printed transcript of testimony which was taken in the bankruptcy proceedings. Appellees further contended in the District Court upon these pleas, and now contend here, that the specific fact of possession of the seed was material to be determined in the bankruptcy proceedings, and in these actions, and that question was adjudicated upon in the bankruptcy proceedings, and cannot be again litigated in these actions between the same parties. The trial court held with appellees in the 1, 2, 3 and 5 propositions of law requested by appellees and

348     APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

error is assigned on the holdings of law. The propositions of law so held by the trial court are as follows:

"1. The court holds as a matter of law that under the pleadings it must be taken as conclusively proven that neither the plaintiff nor the bankrupt was in possession of the seed in question at the time of the bankruptcy and that, therefore, there can be no recovery under the first, second, third or fourth counts of the declaration, nor can there be a recovery under the common counts on any theory which requires such possession in the plaintiff or in the bankrupt to be assumed or proven.

"2. All evidence offered by the plaintiff to prove or as tending to prove that either the plaintiff or the bankrupt was in possession of the seed in question at the time of the filing of the petition in bankruptcy is held as a matter of law to be irrelevant, incompetent and immaterial.

"3. The court holds as a matter of law under the pleadings and evidence in this case that the plaintiff acquired no right or title to the seed in question.

"4. The court holds as a matter of law that the plaintiff acquired no better title to the seed in question than the bankrupt had at the time of the filing of the petition in bankruptcy and that as against the bankrupt the lien acquired by the defendant by virtue of the storage warrants was good, and, therefore, is good also against the plaintiff.

"5. The court holds as a matter of law that the decree of the United States District Court introduced in evidence is *res adjudicata* on the question of possession, and the possession of the National Storage Company for the benefit of the defendant cannot, therefore, be controverted by the plaintiff in this action.

"6. The court holds as a matter of law that money on deposit in a bank, payable on demand, may be appropriated by the bank and applied by way of set-off on the indebtedness of a bankrupt due to the bank at the time of the bankruptcy, and such appropriation will not be a preference under the Bankruptcy Act; and that, therefore, no recovery can be had in this case

on account of the $1,296.82 retained and applied by the defendant by way of set-off.

"7. The court holds as a matter of law that the payments shown to have been received by the defendant on account of the indebtedness of the bankrupt did not constitute preferences under the Bankruptcy Act because the same were in every instance proceeds of property which had been pledged to the defendant by the bankrupt as collateral security at times when the defendant had no suspicion or reasonable ground to suspect that preferences were intended; consequently, such payments cannot be recovered as preferences in this action.

"8. The court holds as a matter of law that under the pleadings and evidence in this cause the plaintiff is not entitled to recover."

The jurisdiction of the bankruptcy court depended upon the bankrupt having actual possession of the seed at the time the bankruptcy proceedings intervened. Had such possession been with the bankrupt at the time he filed his petition in bankruptcy, it would have passed to the plaintiff as receiver and trustee, and the court would have had full jurisdiction to deal with the seed as part and parcel of the bankrupt estate. If such possession was not with the bankrupt at that time, but with persons claiming adverse rights, then the bankruptcy court had no jurisdiction. Sec. 23, clause b, of the Bankruptcy Act; Bardes v. Hawarden Bank, 178 U. S. 524; Mitchell v. McClure, 178 U. S. 539; Hicks v. Knost, 178 U. S. 541; Louisville Trust Co. v. Comingor, 184 U. S. 18; First Nat. Bank v. Chicago Title & Trust Co., 198 U. S. 280.

In the last case the court said (p. 290):

"The question is whether the District Court had jurisdiction to finally adjudicate the merits in this proceeding.* * *

"In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be

350     APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

that it finds it cannot go farther. And where, in a case like that before us, the court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review.''

And the court then adds:

''But nevertheless, the District Court had jurisdiction to determine whether it could or could not proceed further.'' (Citing numerous cases.)

The controlling fact or matter material to the determination of the question of jurisdiction of the bankruptcy court in the proceedings for the sale of the seed was possession by the bankrupt at the time he filed his petition in bankruptcy, and the District Court had jurisdiction to consider and adjudicate that fact in the determination of its jurisdiction. That court found as follows:

''And the court further finds that the receiver in this case had not, at the time of the filing its petition herein, to-wit, on May 13, 1901, the right of possession designated in the answers of the National Storage Company. The First National Bank, H. W. Rogers & Bro., Small & Co., and Kirkpatrick & Co. thereto.

''And the court further finds that the National Storage Company was at the said date and also at the time of the filing of the petition in bankruptcy herein, entitled to possession of said property.''

In the opinion of a majority of the court, a court has jurisdiction to decide whether it has jurisdiction, and that, such decision, and the facts which the court must pass upon to determine that question, are *res adjudicata*. In the very nature of things, some court must have this power, and we think the bankruptcy court before which the proceedings were had was the court in the first instance. This question was so decided in T. E. Hill Co. v. Contractors' Supply & Equipment Co., 249 Ill. 304. See also First Nat. Bank v. Klug, 186 U. S. 202; Louisville Trust Co. v. Comingor, *supra;* First Nat. Bank v. Chicago Title & Trust Co., *supra*. We hold, therefore, that the Dis-

trict Court had jurisdiction or power to determine the fact of possession of the property by the bankrupt in the proceedings pending before it.    The jurisdiction of the court was invoked by appellant in its capacity of receiver of the bankrupt's estate, and the decree entered decided and adjudicated upon the jurisdictional fact.

We here notice, before passing to the next question, appellants' contention that the decree of the District Court is not *res adjudicata*, or estoppel by verdict, because it contains the words, unnecessarily suggested by the Supreme Court.  *Ex parte* First Nat. Bank, 207 U. S. 61):  "Without prejudice to the rights of the trustee, if this court shall so authorize, to litigate in any proper court the question of the right of the said trustee to recover said fund as a part of the bankrupt estate."  In our opinion, these words neither add to nor subtract from the decree.  Its legal effect is not changed thereby.

We now come to the effect, if any, of this decree upon the issues in the cases before us.

In City of Chicago v. Partridge, 248 Ill. 442, the rule of estoppel by verdict, whereby some controlling fact or matter material to the determination of a case which has been adjudicated by a court of competent jurisdiction, and holding such adjudication conclusive in a subsequent action when the same fact or matter is again in issue, is clearly stated.  It is there held that this rule is not dependent upon whether the cause of action is the same in both actions, but that it does require that both actions be between the same parties, or persons in privity with, or represented by them. The general principle is also stated and applied in Southern Pac. R. v. U. S., 168 U. S. 1, at page 48. The conclusiveness of the former judgment is upheld in People v. Hill, 182 Ill. 425; Hanna v. Reed, 102 Ill. 596; Reynolds v. Mandel, 175 Ill. 615; Louisville, N. A. & C. R. Co. v. Carson, 169 Ill. 247; People v. Chicago, B. & Q. R. Co., 247 Ill. 340, and many other cases.

352     APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

The doctrine is held in the Southern Pacific Railroad case, *supra*, to be a beneficent one, which the courts interpose to secure the peace and repose of society by the settlement of matters capable of judicial determination.

The parties before the District Court are the same, or in privity with or represented by them, as the parties to the actions now before us; and the majority of the court is of the opinion that the doctrine applies to these cases; and that the bankrupt did not have possession of the seed described in the receipts of the National Storage Company at the time of filing his petition in bankruptcy must be held to be an adjudicated fact, and appellant is estopped from again litigating that fact in the cases before us. The holdings of the trial court to that effect, and excluding all evidence offered upon that question were not erroneous.

It having been conclusively adjudicated that the bankrupt was not in possession of the seed, it follows necessarily and the evidence shows, that the National Storage Company was in possession as bailee for appellees, First National Bank and H. W. Rogers & Brother, at the time of filing the petition in bankruptcy, and also at the time of filing the petition to sell the seed, for two different persons cannot be in the actual adverse possession of the same property or premises at the same time. When personal property is delivered to a creditor, or to a third person for the benefit of such creditor as a pledge such pledge is binding as against the world, and is binding on all persons claiming under or against the pledgor who have not special liens on the property. Union Trust Co. v. Trumbull, 137 Ill. 146; Taylor v. Turner, 87 Ill. 296. There is no contention here, nor was there in the trial court, that the Frist National Bank or Rogers & Brother were not bona fide creditors of the bankrupt. The evidence is undisputed that Rogers & Brother loaned the bankrupt $5,000 and took as security certain receipts issued by appellee, National Storage

Company. It is likewise undisputed that appellee Bank loaned the bankrupt on November 1, 1900, $2,300; and on December 24, 1900, $3,500; and on January 5, 1901, $2,250; and on March 1, 1901, $1,200; and on February 27, 1901, $1,200; and on January 21, 1901, $4,500, and the bankrupt gave his notes therefor, payable on demand, and, as collateral security therefor, gave to the bank receipts of the National Storage Company shown in the evidence. The indebtedness to appellees, Rogers & Brother, was not paid at the time of bankruptcy; and that to the bank was not fully paid. The mere substitution of one receipt for another, or of one lot of seed for another, as shown by the evidence, did not in any manner affect the validity of the pledges as to appellee, for the substitutions of the lots of seed were without the knowledge or consent of appellees. Union Trust Co. v. Trumbull, *supra*; Hoffman v. Schoyer, 143 Ill. 598; Simmons v. Jenkins, 76 Ill. 479.

While the question of possession is a vital one in these cases, and by the adjudication in the bankrupt court it was settled that the bankrupt was not in possession, and, therefore, that the National Storage Company was in possession of the property, for one or the other concededly was in possession, the question as to whether appellant is entitled to the proceeds of the sale of the seed notwithstanding such possession is still open. If appellees, the bank and Rogers & Brother, or either of them, were not bona fide creditors of the bankrupt, or if an unlawful preference of appellees, or either of them, had been shown, appellant would be entitled to the proceeds of the sale and might recover in these cases, or either of them, according to such proof. These questions, and any other question involving appellees' right to retain the proceeds of the seed may be litigated notwithstanding the decree of the Federal Court, save only the question of possession. But, inasmuch as "the action of assumpsit is an

354 · APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

equitable action, the judgment in such action should be entered only for the sum which ought to be paid,'' (Smith v. Riddell, 87 Ill. 165) and as appellant is entitled to recover for money had and received by appellees, if in equity it belongs to him, the action being in the nature of an equitable demand (Bennett v. Connelly, 103 Ill. 50), we are brought to a consideration of the rights of the trustee in bankruptcy in these cases to the money sued for, the adjudication of the question of possession of the property being taken into consideration.

There is no pretense in the proofs in these cases that there was an unlawful preference made by the bankrupt, either in the original pledges or in the substitution. All the evidence offered by appellant is based on the theory of possession of the seed by the bankrupt, as it was in the bankruptcy court, at the time of the adjudication of bankruptcy. The argument and contention of appellant in this court is mainly upon that theory. The question of any unlawful preference may, therefore, be dismissed without further discussion.

Nor do we think that the evidence shows there was any fraud in fact intended by the parties. The most that can be claimed is that the making of the pledges was tantamount to creating secret liens. The bank and Rogers & Brother were bona fide creditors of the bankrupt and became pledgees of the bankrupt long before bankruptcy proceedings intervened, and without any knowledge that the bankrupt was insolvent. This was done not with the motive of defrauding creditors, but for the purpose of securing liens for their claims, and no actual fraud can be predicated upon the transactions. So that all that can be claimed, leaving out of consideration the adjudicated question of change of possession, is that the liens created were secret liens under the laws of Illinois, and did not comply with the chattel mortgage statute of this state and are, therefore, invalid in law, as against creditors ''armed with

an execution or writ of attachment, or other process of court.'' The trustee represents no such creditors, but general creditors only. In these cases there was a pledge accompanied with a change of possession and the pledges were good and valid. Union Trust Co. v. Trumbull, *supra;* Barchard v. Kohn, 157 Ill. 579; Hoffman v. Schoyer, *supra;* Hooven, Owens & Reutschler Co. v. Burdette, 153 Ill. 672.

In the opinion of a majority of the court, appellant stands in the shoes of the bankrupt, and, therefore, took no better title than the bankrupt had to the seed in question, and has no greater rights as against appellees than the bankrupt would have had were he the plaintiff and appellant here.

Appellant took the title to the bankrupt estate subject to all the liens, equities and burdens to which it was subject in the hands of the bankrupt, there being no creditors who, before the filing of the petition in bankruptcy, had fastened upon the property by some specific liens.

Section 70 (a) of the Bankruptcy Act appears to provide explicitly and definitely that the title the trustee takes is no better than that the bankrupt had, except where property has been transferred by him in fraud of his creditors. That section provides as follows:

''(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification shall in turn be vested by operation of law with the title of the bankrupt, * * * to all * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him.''

That section, as we read it, does not vest the trustee with a better title than the bankrupt had, but the title of the bankrupt to any and all such property. The section, we think, provides for the trustee taking only

356 APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

such title as the bankrupt had, burdened with all equities, charges and liens upon the property. The trustee does not take absolute title, therefore, to such property but merely the title of the bankrupt, the reference to such property as the bankrupt might have transferred or which might have been levied upon and sold being not to the kind of title, but to the kind of property which the trustee takes, the kind of title being that only which the bankrupt had.

The above is the construction given by the court in Hewit v. Berlin Mach. Works, 194 U. S. 296. The court in that case say (page 302):

"The District Court, Hazel, J., held that the reasonable construction of this provision (Section 70-a of the Bankruptcy Law quoted above) was that the trustee was vested with the title which the bankrupt had to property situated as described, and not otherwise, and quoted from the opinion of the Circuit Court of Appeals for the Second Circuit in the case of re New York Economical Printing Co., 49 C. C. A. 133, 110 Fed. 514; upholding that view, as follows: 'The Bankrupt Act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues.' "

In York Mfg. Co. v. Cassell, 201 U. S. 344, there was a contract of conditional sale made for certain machinery. The contract was made in Ohio, and failed, as the court held, to comply with the laws of Ohio, in that such contract was not filed for record. Section 4155 of the Revised Statutes of Ohio provides that where personal property is sold upon installments with an agreement that the title shall remain in the vendor until the payments shall be completed, such provision should be void as to all subsequent purchasers and mortgagees in good faith and creditors, unless such condition should be evidenced by a writing signed by the purchaser, with a statement under oath, and the same deposited with the clerk of the township in one case, or with the county recorder in the other. After mak-

ing such a contract the purchaser was declared a bankrupt, and thereupon the vendor, the York Manufacturing Company, intervened and prayed that it might be allowed to enter the premises of the bankrupt and remove the machinery so sold. The court, through Mr. Justice Peckham, say (page 350):

"The question is simply whether the York Manufacturing Company has a right, under its conditional sale of the machinery to the bankrupt corporation, to take the machinery out of the premises where it was placed, as against all except judgment or other creditors by some specific lien. There are no judgment creditors in the case and no attachment has been levied, and the question is simply whether the adjudication in bankruptcy is equivalent to a judgment or an attachment on the property, so as to prevent the York Manufacturing Company from asserting its right to remove the machinery by virtue of the reservation of title contained in its contract."

The court then refers to the case of Wilson v. Leslie, 20 Ohio 161, construing the language of the Ohio statute relating to chattel mortgages, and say:

"We have not been referred to any decision of the Supreme Court of Ohio as to the meaning of the statute requiring the filing of contracts of conditional sales, but we concur with the Circuit Court of Appeals in this case, that the statute would render the unfiled contract void as to the same class of creditors mentioned in the chattel mortgage statute. Therefore, the contract would be void as to creditors who, before its filing, had 'fastened upon the property' by some specific liens. As to creditors who had no such liens, being general creditors only, the statute does not avoid the sale, which is good between the parties to the contract.

"There are no creditors with any specific liens, nor is there any other mortgage, and there is no attachment.

"We come, then, to the question whether the adjudication in bankruptcy was equivalent to the judgment, attachment or other specific lien upon the machinery. The Circuit Court of Appeals has held herein that the

358    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interests in the bankrupt's estate.

"We are of the opinion that it did not operate as a lien upon the machinery as against the York Manufacturing Company, the vendor thereof. Under the provision of the Bankrupt Act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee, under such circumstances, stands simply in the shoes of the bankrupt, and, as between them, he has no greater right than the bankrupt. This is held in Hewit v. Berlin Mach. Works, 194 U. S. 296, 48 L. Ed. 986, 24 Sup. Ct. Rep. 690. The same view was taken in Thompson v. Fairbanks, 196 U. S. 516, 49 L. Ed. 577, 25 Sup. Ct. Rep. 306. It was there stated that 'under the present Bankrupt Act the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt.' See Yeatman v. New Orleans Sav. Inst., 95 U. S. 764, 24 L. Ed. 589; Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Hauselt v. Harrison, 105 U. S. 401, 26 L Ed. 1075. The same doctrine was reaffirmed in Humphrey v. Tatman, 198 U. S. 91, 49 L. Ed. 956, 25 Sup. Ct. Rep. 567. The law of Ohio says the conditional sale contract was good between the parties, although not filed. In such case the trustee in bankruptcy takes only the right of the bankrupt, where there are no specific liens, as already stated."

In Thomas v. Taggart, 209 U. S. 385, the question arose as to the validity, as against trustees in bankruptcy, of a lien in favor of one Taggart upon certain certificates of stock intended to be pledged to her, the contention being made in that case that the lien was not good as against the trustees. The court, following the Cassell case, say (page 389): .

"It was the evident purpose of the parties that the eighty-three shares of United States Steel stock, preferred, were to be held, as the receipt shows, as security for losses in purchase or sale of stocks, bonds or securities on account of the customer, and the separate paragraph of the receipt, giving the right to repledge, etc., and substitute similar stocks, bonds and securities, had reference to the stocks, securities, etc. obtained in executing the orders for purchase made by the customer.

"This being the situation as to Mrs. Taggart's claim, we think the court properly held that she was entitled to recover her shares of stock. They were not the property of Berry & Company, but were held as collateral to her account, upon which she is not indebted to the brokers. The certificates were returned to the trustees, who had no better right in them than the bankrupt.

"The rule is generally recognized that if the title to property claimed is good as against the bankrupt and his creditors at the time the trustee's title accrued, the title does not pass, and the property should be restored to its true owner; or, if the property has been sold, the proceeds of the sale take the place of the property." (Citing authorities.)

Security Warehousing Co. v. Hand, 206 U. S. 415, turned on the fact that there was no change of possession, and the Knitting Company was therefore in possession. In this case (page 423), it was said:

"It is no new doctrine that the assignee or trustee in bankruptcy stands in the shoes of the bankrupt, and that the property in his hands, unless otherwise provided in the bankrupt act, is subject to all of the equities impressed upon it in the hands of the bankrupt. This has been the rule under former acts and is now the rule."

It follows, we think, from the authorities above cited that the bankrupt, suing appellees in *assumpsit* for money had and received, could not recover because it would be inequitable to permit such a recovery; and,

if the bankrupt could not recover, the trustee, standing in his shoes, cannot recover in these cases.

The judgments of the court below, being in accordance with the principles above announced, are affirmed.

*Affirmed.*

MR. JUSTICE CLARK dissenting:

I do not think the doctrine of estoppel by verdict or that of *res adjudicata* applies. In my judgment a trustee is in a different position than the bankrupt or a receiver of a bankrupt. The receiver could only have sold the property if it was in the possession of the bankrupt. The trustee, on the other hand, may proceed in the same way that an attaching or execution creditor could have proceeded prior to the adjudication of the insolvency of the bankrupt. In the case last referred to in the majority opinion, Security Warehousing Co. v. Hand, 206 U. S. 415, Mr. Justice Peckham sets forth the views of the court as to the powers of a trustee. On page 425 it is said:

"By section 70*a*, the trustee in bankruptcy is vested by operation of law with the title of the bankrupt to all property transferred by him in fraud of his creditors, and to all property which, prior to the filing of the petition, might have been levied upon and sold by judicial process against him; and by subdivision (*e*) of the same section the trustee in bankruptcy may avoid any transfer by the bankrupt of his property, which any creditor of the bankrupt might avoid, and may recover the property so transferred, or its value. Here are special provisions placing the title to the property transferred by fraud, or otherwise as mentioned, in the trustee in bankruptcy, and giving him the power to avoid the same."

In Mueller v. Nugent, 184 U. S. 1, it is said:

"It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction."

The question of whether or not the National Storage

Company was in rightful possession of the seed was not determined in the Federal Court. The District Court undertook to determine that question, but it was held by the Supreme Court that it had no jurisdiction so to determine. First Nat. Bank v. Chicago Title & Trust Co., 198 U. S. 280. It was, doubtless, with the thought in mind that the receiver and trustee held different relations to the estate that the suggestion was made by the Supreme Court that the order should have been without prejudice to the trustee to begin proceedings in a court having jurisdiction, namely, the state court. It is impossible for me to reach the conclusion from the evidence that the Storage Company was in possession of the property. The facts, as well as the view of the law which I think should control, are so succinctly stated in the opinion of Mr. Justice Jenkins in the futile appeal to the Court of Appeals, that I quote his language, as follows *In re* Rodgers, 60 C. C. A. 567, 125 Fed. 169, 177:

"The bankrupt was largely engaged in purchasing seed upon credit, storing the property purchased in his warehouse. He occupied the premises as a place of business, maintaining an office there, with clerks to assist in the management of the business, and with porters to handle the seed. The premises were subject to a rental of $250 a month. He arranged with the storage company, which had no warehouse of its own, that it would issue warehouse warrants or receipts to the bankrupt for property upon the bankrupt's premises for a certain small charge per month upon the value of the property covered by the receipts. He executed a lease of the premises to the storage company, to continue so long as the bankrupt should desire, and so long as property remained thereon for which warrants or receipts had been issued; and this without any payment of rent by the storage company, the rental in fact being paid by the bankrupt. The storage company neither required, nor was it given, any key to the premises. The bankrupt remained in possession of the premises as before the agreement, continuing to transact his business there as he had for-

362    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

merly done. There were certain signs placed upon the different floors of the building, indicating that the storage company controlled the premises. These were small and obscure signs, not likely to attract attention, and most of them hidden behind piles of bags of seed. No sign was displayed upon the exterior of the building indicating any proprietorship of the storage company, or giving notice to the world that any other than the bankrupt had possession and control. There was no open, notorious manifestation of a change of possession, none was intended, and there was none in fact. Upon each pile of bags of seed for which the warehouse receipts or warrants were issued there was placed a small tag, which might be discovered upon careful search. The bankrupt substantially treated this property as his own, at times going through the forms prescribed by the storage company, and, whenever he found it necessary, ignoring them. We do not find that the storage company had knowledge of this action of the bankrupt, but it certainly knew that it was possible under the circumstances for the bankrupt to do with the property as he would, since it was left within his control.

"It is difficult for us to look upon this transaction as a warehousing of property. The storage company assumed no liability to the bankrupt, and assumed only such responsibility as the law imposes upon it with respect to those advancing money upon the faith of its warehouse warrants or receipts. The name of the company is in itself, under the circumstances, a false pretense. It did not store property. It had no premises upon which to store property. The bankrupt stored the property. The bankrupt paid the rental of the premises. It is true that an agent of the storage company occasionally visited the premises and inspected the property in a sort of a way, but exercised no supervision or control that would prevent the bankrupt from doing with it as his will might dictate or his financial necessities might require. We cannot but regard this arrangement as a subterfuge, a mere device to enable the bankrupt to hypothecate the warehouse warrants or receipts, and so to raise money upon secret liens upon property in his possession and under his control.

The written agreement indicates this. It is somewhat startling to learn that a warehouse company should store goods of this character for another upon the premises of that other, taking compensation for storage, not related to the cost of storage, or to the expense of receiving and delivering the property, not according to the space occupied by the property, but according to the value of the property. The fact here is patent that the storage company assumed to the bankrupt no liability, and that the sole purpose was to issue warehouse warrants or receipts, making such inspection only as, in its judgment, would protect it from liability to third persons by reason of the issue of its warrants. To uphold such a scheme would permit every merchant in the state, notwithstanding the declared policy of the state to the contrary, to have possession of large stocks, thereby inducing credit, and to cover them with secret liens, thereby deceiving creditors. It would, in effect, permit such merchant to pledge his entire stock without change of possession, without record of it, and without notice to the world. Such a scheme is disapproved by the law of the state of Illinois, which in this instance we are bound to uphold, however specious may be the device or however attractive may be the form by which it is cloaked. Such a scheme within the state of Illinois is constructively fraudulent as to creditors, and voidable by creditors.

"Nor can we uphold this transaction as a pledge of the property to the bank and to H. W. Rogers & Brother. Actual or symbolical possession of personal property in the pledgee is essential to its pledge. It is true that when the actual delivery is to a carrier or warehouseman, and bill of lading or warehouse receipt is given therefor, the transfer of the instrument and its delivery to the pledgee is regarded in the law as delivery of possession to the pledgee of the property represented by the instrument; but it is a necessary condition to the existence of such symbolical possession by the pledgee that the property itself be in the possession of some person other than the pledgor. Two different persons cannot be in the actual adverse possession of the same property or premises at the

364    APPELLATE COURTS OF ILLINOIS.

Chicago T. & T. Co. v. First Nat. Bank of Chicago, 174 Ill. App. 339.

same time, and, as we find the actual possession and actual control of the property in dispute to have been in the bankrupt, the transfer of these warehouse receipts to bona fide holders for value, even without notice of the fact, cannot constitute a valid pledge of the goods, as the storage company had not possession and control of the goods. Union Trust Company v. Trumbull, *supra*" (137 Ill. 146).

The language of Mr. Justice Peckham in Security Warehousing Co. v. Hand, *supra*, might be well applied to this case:

"There was scarcely a semblance of an attempt at such change of possession from the hands of the knitting company to the hands of the warehousing company. Actual possession of the property in question was exercised by and existed with the knitting company substantially the same after the issuing of the receipts as before. It is a trifling with words to call the various transactions between the knitting company and the warehousing company a transfer of possession from the former to the latter. There was really no delivery, and no change of possession, continuous or otherwise. The alleged change was a mere pretense, a sham."

In my opinion a trustee, unlike a receiver in bankruptcy, has not only the title to the property which the bankrupt has, but he may also, in his capacity and as acting for creditors, who are powerless to pursue and enforce their rights, assail all transfers and incumbrances to the same extent as could such creditors. It may be admitted that the First National Bank and H. W. Rogers & Brother are bona fide holders for value, and without notice, of the warehouse receipts, having given therefor a full consideration; but these warrants were not commercial paper, and the bank and Rogers & Brother should not be allowed to profit by a secret lien, apparently entered into for their benefit by the bankrupt in fraud of the rights of his other creditors. We should not be led astray by the fact that the Chicago Title & Trust Company acted both as

receiver and trustee. Its powers in the latter capacity are distinctly different from its powers in the former capacity.